WILLIAM C. CARBONE, JR. *v.* ATLANTIC
RICHFIELD COMPANY
(13120)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued June 3—decision released July 21, 1987

*Carter LaPrade,* with whom, on the brief, was *Stanley E. Parese,* for the appellant-appellee (defendant).

*Thomas DeMatteo,* with whom, on the brief, were *Vincent R. Falcone* and *Daniel H. Cohen,* law student intern, for the appellee-appellant (plaintiff).

GLASS, J. The plaintiff, William C. Carbone, Jr., brought this action in three counts against the defendant, Atlantic Richfield Company (ARCO), claiming that he had been wrongfully discharged by the defendant. In the first count of the amended complaint, Carbone alleged that ARCO breached its oral contract and the implied covenant of good faith and fair dealing by discharging the plaintiff. In the second count, Carbone alleged that his discharge was malicious and improper. In the third count, he alleged that ARCO, by dismiss-

ing him for the reasons that it did, breached an implied contract to discharge him only for cause. The case was tried to a state trial referee, who found for ARCO on the first and third counts and for Carbone on the second count. ARCO has appealed and Carbone has filed a cross appeal. We find error on the appeal but no error on the cross appeal.

I

The state trial referee, exercising the powers of the Superior Court, found the following facts: Carbone was hired by ARCO on March 13, 1978, under an oral contract of employment. He had an at will agreement, terminable at any time by him or ARCO. He was discharged by ARCO on September 16, 1982. At the time of his discharge and for some time prior to the date of his discharge, ARCO had employed him as a marketing representative in the New Haven area.

As a marketing representative his duties included servicing ARCO's independent retail service station operators and reporting regularly to ARCO's regional office the retail gasoline prices of selected competing service stations. These reports, known as "competitor price surveys," aid ARCO in determining the price of gasoline that ARCO charges its retail operators and help ARCO determine whether it may grant price adjustments to its retail operators so that they may meet local competition. Under federal antitrust laws; see 15 U.S.C. §§ 13 through 13b, and 21a; a wholesaler is prohibited from charging different prices to similarly situated retail dealers.[1] A wholesaler may nonetheless

---

[1] 15 U.S.C. § 13 (a) provides in part: "Price; selection of customers

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Colum-

charge a particular dealer a lower price if it is necessary to compete with local prices.[2] If, however, these price reductions, known in the gasoline service station business as "temporary voluntary allowances" (TVA), are granted without justification, the wholesaler may be in violation of antitrust laws.

ARCO, concerned with potential antitrust liability and with its overall pricing strategy, developed a policy governing the reporting of competitor price surveys. Carbone acknowledged that he had read and understood ARCO's corporate and marketing department's antitrust and legal policies on several occasions between 1978 and 1981. Thus, there is no claim that he was unaware of the importance of accurate competitor price survey reports. Prior to Carbone's termination, an interoffice memorandum concerning ARCO's pricing policy and certain procedures was sent to William J. Donovan, Carbone's regional supervisor, in Syracuse, New York. Shortly thereafter, Donovan received another internal communication notifying him that these procedures were being implemented and that

bia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination . . . ."

[2] 15 U.S.C. § 13 (b) provides: "Burden of rebutting prima-facie case of discrimination

"Upon proof being made, at any hearing on a complaint under this section, that there has been discrimination in price or services or facilities furnished, the burden of rebutting the prima-facie case thus made by showing justification shall be upon the person charged with a violation of this section, and unless justification shall be affirmatively shown, the Commission is authorized to issue an order terminating the discrimination: *Provided, however,* that nothing herein contained shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor." (Emphasis in original.)

"any employee who deliberately manipulates competitive price information is subject to disciplinary measures, including termination." Neither of these communications was intended for Carbone. Additionally, on the day he was terminated, an interdepartmental memorandum was sent to Carbone, notifying him of this policy, instructing him that pricing was to be accurate and truthful, and cautioning that "discrepancies between survey prices and audit prices [could] result in serious consequences if the responsibilities of field personnel have not been carried out as instructed, and according to this letter." Because of his dismissal, Carbone did not receive this memorandum.

On September 8, 1982, Carbone conducted a competitor price survey of various service stations in the New Haven area. An independent survey revealed different prices from those reported by Carbone. When these discrepancies came to the attention of ARCO's regional office in Syracuse, Carbone was asked to, and did, repeat his survey. Subsequently, another survey conducted by an employee of ARCO again revealed price discrepancies.

On September 13, 1982, Carbone was called to a meeting at the regional office to account for the alleged discrepancies. At the meeting, Carbone challenged the findings of the other surveys, and maintained that his surveys were accurate. He refused, however, to discuss the claimed discrepancies which appeared on his list. After the meeting, Carbone returned home but three days later, on September 16, 1982, he was asked to return to Syracuse, apparently to be formally dismissed. Carbone, who refused to attend that meeting, was discharged as of that date. ARCO cited Carbone's submission of incorrect price information as the grounds for his discharge.

Having found these facts, the referee then addressed Carbone's legal arguments. In addressing the first

count, namely that ARCO breached an implied covenant of good faith and fair dealing by dismissing Carbone, the trial referee first found that Carbone was an at will employee and as such had assumed the risk of termination without cause. Relying primarily upon *Magnan* v. *Anaconda Industries, Inc.*, 193 Conn. 558, 479 A.2d 781 (1984), the referee reasoned that an employee may sustain a cause of action for breach of an implied covenant of good faith and fair dealing only when that person has been discharged in violation of some important public policy. Noting that Carbone did not claim that he had been discharged because he had refused to violate any antitrust law, the referee held that "the requirement of . . . accuracy in the plaintiff's reporting of the competitor prices is a requirement of internal management . . . and is not seen as one affecting public policy in . . . that it is injurious to the public or against the public good, but rather subserves these purposes," and concluded that Carbone's dismissal did not constitute a violation of public policy.

The referee, in considering Carbone's third count, i.e., that ARCO breached an implied contract established in part by ARCO's employment manual, first recognized that an employment manual may provide terms of an employment contract under the appropriate circumstances. The referee, however, concluded that under the circumstances of the present case, the terms of the manual did not become part of Carbone's contract of employment. Although ARCO maintained a manual that pertained to the policy of employment and separation of employees, the referee reasoned that because the manual was not intended nor maintained for every employee, and because Carbone had no knowledge of the manual or its provisions, it could not constitute part of his employment contract. Accordingly, the referee found for ARCO on count three also.

The referee, however, found for Carbone on the second count of his amended complaint, which alleged that his discharge had been malicious and improper. In addressing this count, the referee again noted that Carbone, as an at will employee, could be terminated without cause. Nonetheless, the referee reasoned that because ARCO had stated a cause for the discharge, it was required to carry out the procedure in a reasonable manner. Reviewing the circumstances surrounding Carbone's dismissal, the referee concluded that ARCO had exercised its right of discharge "in an unreasonable and unnecessarily abusive manner and in abuse of discretion," thus entitling Carbone to damages and attorney's fees.

On appeal, ARCO claims that the referee erred in: (1) concluding that it was liable for the manner in which it dismissed the plaintiff; (2) awarding damages based on the plaintiff's lost earnings notwithstanding the defendant's right to discharge the plaintiff; and (3) awarding attorney's fees. The plaintiff has cross appealed, claiming that the trial referee erred in: (1) rendering judgment in favor of the defendant on counts one and three of his complaint; and (2) in calculating his damages. We find error on the defendant's first claim, but find no error with respect to the plaintiff's claims on the cross appeal. Accordingly, we need not consider any of the ancillary claims concerning damages.

## II

In addressing ARCO's first claim, we find two of our cases, *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 427 A.2d 385 (1980), and *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 513 A.2d 66 (1986), to be of assistance. In *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 475, we recognized a common law cause of action in tort for the discharge of an at will employee "if the

former employee can prove a demonstrably *improper* reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." (Emphasis in original.) Acknowledging that courts should not lightly intervene to impair the exercise of managerial discretion, we nonetheless recognized that employees who are discharged for reasons that violate public policy are entitled to a modicum of judicial protection. Id., 477. Accordingly, we held that where an employee alleged that he had been discharged in retaliation for his insistence that his employer comply with the requirements of the state Food, Drug and Cosmetic Act, he had stated a valid cause of action. Id., 480.

Recently, in *Morris* v. *Hartford Courant Co.,* supra, we examined whether the cause of action alleged therein was within the narrow public policy exception to the general rules governing the termination of at will employment relationships. In *Morris,* the wrongful discharge claim was based upon the allegation that the employer had " 'falsely charg[ed] the [plaintiff] with criminal conduct,' " and that the "[employer] negligently investigated the matter." Id., 679–80. In addressing the employee's claim, we stated: "This public policy exception to the employment at will rule carved out in *Sheets* attempts to balance the competing interests of employer and employee. Under the exception, the employee has the burden of pleading and proving that his dismissal occurred for a reason violating public policy. The employer is allowed, in ordinary circumstances, to make personnel decisions without fear of incurring civil liability. Employee job security, however, is protected against employer actions that contravene public policy." Id., 679. We concluded that "[a] false but negligently made accusation of criminal conduct as a basis for dismissal is not a 'demonstrably *improper* reason for dismissal' (emphasis in original) and is not 'derived from some important violation of

public policy.' *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 475." *Morris* v. *Hartford Courant Co.*, supra, 680.

There is no allegation in the amended complaint nor any finding by the state trial referee that ARCO's action in discharging Carbone violated any public policy. Specifically, the trial referee found that "[i]n the present case the requirement of [the] defendant of accuracy in the plaintiff's reporting of the competitor prices is a requirement of internal management of the defendant and is not seen as one affecting public policy in the sense that it is injurious to the public or against the public good, but rather subserves these purposes."

The trial referee nonetheless concluded that ARCO had exercised its right to dismiss Carbone in an unreasonable and unnecessarily abusive manner and in abuse of discretion because ARCO: (1) had found that the inaccuracies in Carbone's surveys had been intentionally and deliberately made; (2) had maligned Carbone who had otherwise been an employee of "good name and integrity"; and (3) had unfairly documented his employment record which might adversely affect his future employment opportunities. Significantly, Carbone does not claim that these reasons cited by the referee contravened public policy, either by violating an explicit statutory or constitutional provision or by transgressing judicially conceived notions of public policy. Accord *Morris* v. *Hartford Courant Co.*, supra, 680; see generally *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 474 n.3, 476, 480. ARCO therefore claims that the referee was incorrect in imposing upon it liability for the manner in which it dismissed Carbone.

Any termination of an at will employment relationship can generate a question regarding the manner of discharge. In the present case, however, we conclude that there is no material difference between the rea-

sons for a discharge, as alleged in *Morris* v. *Hartford Courant Co.,* supra, and the manner of discharge as claimed here.

In *Morris,* the employee alleged that the employer had failed to investigate its charges reasonably and adequately. Id., 680. Thus, the employee's claim that his discharge was based on a violation of public policy because the employer falsely charged him with criminal conduct was premised solely upon the negligent *manner* in which the employer investigated the accusation. See id. In that case, we held that such allegations did not fall within the necessary parameters for an actionable wrongful discharge claim. Id., 681.

Carbone attempts to distinguish *Morris,* by claiming that "[t]he *Morris* court's analysis focused on the reason for the discharge. The manner of the discharge was not raised and therefore was not considered. In [this] case, both the trial court and the plaintiff focused on the manner of the discharge." We find his argument unpersuasive. Here, Carbone claims that the manner in which ARCO ultimately discharged him is actionable. Unless there is an expansion of the *Sheets* requirement or an additional exception to the traditional common law employment at will discharge rules, the reason for or the manner of discharge must be not only demonstrably improper, but the impropriety must be derived from some important violation of public policy. Under the allegations of the present amended complaint and the findings of the trial referee we find it unnecessary, at this time, to articulate precisely the difference, if any, between the reason for discharge and the manner of discharge in an at will employment relationship.[3] We adhere to our statement in *Morris* v.

---

[3] At trial, Carbone withdrew any claim that he was discharged because of animosity on the part of his supervisors. We therefore need not consider whether such a claim would establish a viable cause of action under

*Hartford Courant Co.*, supra, 679 n.2: "In *Magnan* v. *Anaconda Industries, Inc.*, 193 Conn. 558, 572, 479 A.2d 781 (1984), we expressly refused to enlarge the circumstances under which an employee at will may successfully challenge his dismissal beyond the situation where the reason for his discharge involves impropriety derived from some important violation of a public policy."

Accordingly, we conclude that the trial referee erred in holding ARCO liable for the manner in which it discharged the plaintiff.

### III

Carbone, on cross appeal, first argues that the referee erred in finding that ARCO had not breached an implied covenant of good faith and fair dealing in its oral contract by dismissing the plaintiff. Claiming that such a covenant "should be interpreted as a standard of behavior which governs the conduct" of the contracting parties, Carbone contends that the referee should have determined that the defendant, by its behavior and conduct in performing the contract, breached this implied covenant. We disagree.

Recently we have stated that although we endorse the principle of good faith and fair dealing in employment contracts, the purpose of such an implied covenant is to fulfill the reasonable expectations of the parties. *Magnan* v. *Anaconda Industries, Inc.*, supra. Where an employment contract is clearly terminable at will, however, a party cannot ordinarily be deemed to lack good faith in exercising this right. Id. Thus, absent a showing that the discharge involves an impropriety which contravenes some important public policy, an employee may not challenge a dismissal based upon

this public policy exception. See *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 680, 513 A.2d 66 (1986). Additionally, Carbone does not claim that he suffered emotional distress as a result of his discharge.

an implied covenant of good faith and fair dealing. Id. In the present case, the trial referee found that the plaintiff's dismissal was not based on some impropriety involving a violation of public policy, a finding which the plaintiff does not challenge. Accordingly, his dismissal did not breach an implied covenant of good faith. We therefore find no error.

## IV

Carbone also complains that the trial referee erred in holding that ARCO did not breach an implied contract to dismiss the plaintiff only for cause. Reasoning that evidence was introduced at trial that the defendant had an employment manual establishing a policy to terminate an employee only for cause, the plaintiff contends that the manual became part of his employment contract thereby "transform[ing] the employment contract from one terminable at will to one terminable only for cause." Carbone claims that because good cause was not shown the referee should have found that ARCO had breached the implied terms of the contract.

In determining the terms of a contract, the intentions of the parties, manifested by their words and actions, are essential. *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 199, 520 A.2d 208 (1987); *Hydro-Hercules Corporation* v. *Gary Excavating, Inc.*, 166 Conn. 647, 652, 353 A.2d 714 (1974); see J. Calamari & J. Perillo, Contracts (3d Ed. 1987) § 2-1, p. 25. While we have recognized that, under appropriate circumstances, the terms of an employment manual may give rise to an express or implied contract between employer and employee; see *Finley* v. *Aetna Life & Casualty Co.*, supra, 198–99; *Magnan* v. *Anaconda Industries, Inc.*, supra, 565; in the absence of definitive contractual language, the question of whether the parties intended the manual to constitute part of the contract is a question

of fact to be determined by the trier of fact. *Finley* v. *Aetna Life & Casualty Co.*, supra, 199; see generally *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.*, 183 Conn. 266, 274–75, 439 A.2d 314 (1981).

In the present case, the referee concluded that ARCO's employment manual did not constitute part of the employment contract between ARCO and Carbone. The referee found that the manual was not intended or maintained for all employees, but it was distributed only to supervisory personnel, of which Carbone was not one. Moreover, the referee found that Carbone was not aware of the manual before or during his employment, and therefore did not rely on its provisions at any time. The referee thus held that the manual was not part of the employment contract. Because the question of whether an employment manual constitutes part of an employment contract is a question of fact, and the referee found that under these circumstances the manual was not part of the contract, we conclude that the referee did not err in his ruling.

There is error on ARCO's appeal, the judgment on count two is set aside and the case is remanded with direction to render judgment for ARCO on count two of the amended complaint. There is no error on Carbone's cross appeal.

In this opinion the other justices concurred.