[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum of Decision on Defendants' Motion to Strike
On August 19, 1994, the plaintiff, Don Lark, brought this action seeking immediate temporary and permanent injunctive CT Page 9481 relief to prevent the defendants Armond Terzi and Post-Newsweek Stations, Connecticut, Inc. from violating the terms of an employment contract between Lark and Post-Newsweek Stations (PNS). More specifically, Lark sought an injunction preventing PNS from removing him from his position as an anchorman on the 6:00 and 11:00 p.m. news programs and from announcing in any form or medium that the plaintiff has been removed or replaced as an anchorman on the news programs.
The court, Berger, J., held hearings on Lark's request for a temporary injunction in late October, 1994.
On October 13, 1994, both defendants filed a motion to strike counts two, three, five, six, seven, eight, nine, and ten of the verified complaint.
-I-
Count Two — Breach of Contract
In count two, Lark alleges that he had an employment contract, which was comprised of a two page letter agreement and an eight page PNS talent clause contract. Additionally, he alleges that he took less compensation than he otherwise would have sought on the belief that he would participate personally as anchor on the 6:00 and 11:00 p.m. news programs. He claims that the reasonable expectation of the parties was that he would be the anchorperson on the 6:00 and 11:00 p.m. newscasts for the period of August 2, 1992 through August 1, 1995 and that PNS's removing him from these broadcasts constitutes a breach of the covenant of good-faith and fair dealing on PNS's part.
PNS argues that count two should be stricken because Lark has failed to allege a sufficient claim for breach of the implied covenant of good-faith and fair dealing because this requires a claim of bad faith, which Lark has failed to allege.
In response, Lark argues that every contract contains an implied covenant of good faith and fair dealing. He did not have to plead a violation of public policy, because he was a contractual employee of PNS, not an at-will employee.
Connecticut courts make a distinction between a breach of CT Page 9482 implied covenant of good-faith and fair dealing for an at-will employee and a contractual employee. An at-will employee can only recover on a claim of breach of implied covenant of good-faith and fair dealing if the employee can show that the employer violated public policy in its firing of the employee.Magnan v. Anaconda Industries, Inc., 193 Conn. 558, (1984);Carbone v. Atlantic Richfield Company, 204 Conn. 460,528 A.2d 1137 (1987). The reason for this distinction is that where "an employment contract is clearly terminable at will, . . . a party cannot ordinarily be deemed to lack good faith in exercising this right." Carbone, supra, 204 Conn. 470.
On the other hand, where an employee has a contract with an employer for a definite period of time, Connecticut courts recognize that a cause of action for breach of implied covenant of good faith and fair dealing may be brought by the employee against the employer. In Magnan v. AnacondaIndustries, Inc., supra, 193 Conn. 566-567.
The Supreme Court in Magnan observed that while there was "no reason to exempt employment contracts from the implication of a covenant of good faith and fair dealing in the contractual relationship, we do not believe that this principle should be applied to transform a contract of employment terminable at the will of either party into one terminable only at the will of the employee or for just cause." The purpose of allowing claims of good faith and fair dealing in employment contracts is to "fulfill the reasonable expectations of the parties." Carbone v. Atlantic RichfieldCo., supra, 204 Conn. 470. The policy set forth in Magnan has been followed by many Superior Court decisions. See Gaudio v.Griffin Health Services, 8 CSCR 235 (Dec. 19, 1991, Sequino, J.) (Court denied a motion to strike a breach of covenant of good faith and fair dealing claim for a contractual employee);Baton v. Smith Real Estate, Superior Court, Judicial District of New London at New London, Docket # 51 50 81 (Jan. 24, 1992, Purtill, J.) (Defendants summary judgment on covenant of good faith and fair dealing claim denied because material question of fact exists as to whether parties entered employment contract); Settembri v. Am. Radio Relay League, 7 CSCR 483
(Mar. 27, 1992, Schaller, J.) (Court denied a motion to strike a breach of covenant of good faith and fair dealing claim for a contractual employee).
Lark has alleged the existence of a contract with PNS and CT Page 9483 an expectation that he would remain as lead anchor until the end of that contract and that PNS acted in bad faith by hiring Terzi to take Lark's place. These allegations are sufficient to support a claim for breach of implied covenant of good faith and fair dealing. Motion to strike the second count is denied.
-II-
Count Three — Promissory Estoppel
In count three, Lark alleges that PNS made oral promises to him that he would anchor the 6:00 and 11:00 newscasts between August 2, 1992 through August 1, 1995, and reinforced those promises by indicating to him that his employment contract was secure. Lark further alleges that PNS knew or should have known that Lark would rely on those statements and that in reliance on those statements, he agreed to accept less compensation than he otherwise could have gotten elsewhere.
PNS argues that the third count should be stricken because a valid employment contract exists and that a claim for promissory estoppel does not lie where an employment contract exists because Lark can sue on the contract.
Lark claims that he has alleged the elements necessary for a promissory estoppel claim, and that he has not asserted any claim by way of promissory estoppel that contradicts his written contract.
In D'Ulisse-Cupo v. Board of Directors of N.D.H.S.,202 Conn. 206, 213, (1987) our Supreme Court discussed the doctrine of promissory estoppel as follows:
 Under the law of contract, a promise is generally not enforceable unless it is supported by consideration. This court has recognized, however, the development of liability in contract for action induced by reliance upon a promise, despite the absence of common-law consideration normally required to bind a promisor. Section 90 of the Restatement Second states that under the doctrine of promissory estoppel a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third CT Page 9484 person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all.
A promissory estoppel claim consists of two elements. First, the party against whom estoppel is claimed must act to induce another party to believe that certain facts exist and to act on that belief. Kimberly-Clark Corporation v. Dubno,204 Conn. 137, 148, 527 A.2d 679 -(1987). Second, that party must change its position in reliance on those facts. Id.
PNS argues that because Lark has sued on the contract, he can not now claim promissory estoppel. "It is axiomatic that a party is entitled to rely upon its written contract as the final integration of its rights and duties." Levine v.Massey, 232 Conn. 272, 279, (1995). "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." Leonard Concrete PipeCo. v. C.W. Blakeslee Sons, Inc., 178 Conn. 594, 598,424 A.2d 277 (1979).
An action for promissory estoppel generally lies when there is no written contract, or the contract cannot be enforced for one reason or another. Thus, it is an action outside the contract. When an enforceable contract does exist, the parties cannot assert a claim for promissory estoppel based on alleged promises that contradict the written contract. Lombardi v. Marketing Corp. of America, Superior Court, Judicial District of Fairfield at Bridgeport, Docket No. 29 32 81 (May 23, 1994, Moran, J.) quoting NCC SundayInserts, Inc. v. World Color Press, Inc., 759 F. Sup. 1004
(S.D.N.Y. 1991).
Lark is attempting to use the discussions that occurred during the negotiations of his contract as a basis for his promissory estoppel claim. A party does not have a cause of action for promissory estoppel where an existing contract exists is alleged and appears to be enforceable. We conclude CT Page 9485 that because Lark has a valid action on the contract, no cause of action lies against PNS for promissory estoppel and Count Three is insufficient at law. Motion to strike the third count is granted.
-III-
Count Five — Negligent Infliction of Emotional Distress
The fifth count sounds in negligent infliction of emotional distress, Lark claiming that PNS's actions directly caused Lark to suffer mental distress, anguish, and anxiety.
PNS argues that Lark has not properly alleged a claim for negligent infliction of emotional distress, because he has not alleged either extreme conduct or serious injury.
Lark contends that PNS's conduct was extreme and outrageous in that PNS knew how important the job was to him, and knew that taking him off the air would cause him emotional distress, and that in any event the determination of extreme and outrageous conduct is a jury question.
In order to sustain a claim for negligent or unintentional infliction of emotional distress, the plaintiff must persuade the court by "pleading and establishing that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress, and that distress, if it were caused, might result in illness or bodily harm." Buckman v. Peoples Express, Inc., 205 Conn. 166, 173,530 A.2d 596 (1987); see also Morris v. Hartford Courant,200 Conn. 676, 683, 513 A.2d 66 (1986).
"There is nothing . . . to preclude an action for unintentional infliction of emotional distress based upon unreasonable conduct of the defendant [employer] in the termination process. . . . Nonetheless, where a plaintiff was terminated for legitimate business reasons, it has been held that a defendant cannot be liable for the normal distress and hurt feelings that result whenever anyone is discharged from employment." Emanuele v. Boccaccio Susanin, Superior Court, Judicial District of Hartford/New Britain at Hartford, Docket No. 37 96 67 (Dec. 12, 1994, Wagner, J.) quoting Morris v.Hartford Courant Co., 200 Conn. 681-683. CT Page 9486
Lark has not alleged sufficient facts to show that PNS knew that its conduct would result in harm to him, or that PNS created an unreasonable risk of causing harm to him. Motion to strike the fifth count is granted.
-IV-
Count Six — Intentional Infliction of Emotional Distress
In count six, Lark alleges that PNS's hiring Terzi was done with intent to inflict emotional distress upon him, or PNS should have known that emotional distress to Lark would be the likely result of its conduct and that as a result of this intentional conduct, Lark has suffered severe mental distress, anguish, and anxiety.
PNS argues that the sixth count should be stricken because Lark has failed to allege sufficient intentional conduct by PNS to support a claim for the intentional infliction of emotional distress.
A plaintiff must establish four elements in order to state a sufficient claim for intentional infliction of emotional distress.
 It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. . . . Thus, [i]t is the intent to cause injury that is the gravamen of the tort. . . .
Drew v. K-Mart Corp., 37 Conn. App. 239, 251, (1995), quotingDeLaurentis v. New Haven, 220 Conn. 225, 266-67, (1991).
In Bosco v. MacDonald, 13 Conn. Law Rptr. 312 (Jan. 31, CT Page 9487 1995, West, J.) the court observed:
 Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress. There is liability for conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a serious kind. . . . Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy this element is a question, in the first instance, for this court. Only where reasonable minds can differ does it become an issue for the jury.
quoting Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17 (July 11, 1991, Berdon, J.).
Since Lark has not alleged facts that rise to that level of outrageous conduct required the motion to strike the count six is granted.
-V-
Count Seven — CUTPA
In the seventh count, Lark claims a violation of CUTPA in contravention of General Statutes § 42-110a et. seq in that PNS's conduct in pursuing television personalities from another market, its employ of them in violation of its own contractual obligations, and in violation of the individual television personalities contract, "is immoral, unethical, oppressive, unscrupulous, and against the public policy of this state".
PNS contends that the employer-employee relationship is not a trade under CUTPA and its motion to strike as to count seven should be granted.
In this case Lark has alleged the existence of an employment contract with PNS, and that PNS violated that contract by hiring Terzi. CUTPA does not generally apply to disputes arising out of the employer-employee relationship. CT Page 9488Quimby v. Kimberly Clark Corp., 28 Conn. App. 660, 670, (1992); Stafford v. First Financial Management Corp., Superior Court, Judicial District of Hartford/New Britain at Hartford, Docket No. 06 62 46 (Mar. 25, 1993, Wagner, J.); Krupa v.United Technologies, 2 CSCR 740 (July 1, 1987, Maloney, J.);Sall v. Jones Apparel Group, Inc., 9 Conn. L. Rptr. 90 (June 7, 1993, Lewis, J.), Oluvide v. Travelers Insurance Co.,7 CSCR 645, 646 (May 7, 1992, Aurigemma, J.). No sufficient reason has been set forth by the plaintiff to depart from the general rule. Motion to strike the seventh count should be granted.
-VI-
Count Eight — Interference with Contract
In the count eight directed to Terzi, Lark alleges that Terzi knew that Lark had a contract with PNS, and that his act in seeking out, and signing, a contract with PNS would have Lark removed as the 6:00 and 11:00 anchorman. Lark alleges that Terzi's intentional conduct interfered with Lark's contract and Lark has suffered damages as a result.
Terzi claims that Lark has not alleged and cannot establish that Terzi owed a duty to Lark or that Terzi intended to harm Lark or the existence of any improper motives or means by Terzi.
The gravamen of this count sound in tortious interference with business relations:
In Robert S. Weiss Associates Inc. v. Wiederlight,208 Conn. 525, 535, (1988), our Supreme Court observed:
 Nevertheless, not every act that disturbs a contract or business expectancy is actionable. For a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation or that the defendant acted maliciously. An action for intentional interference with business relations requires the plaintiff to plead and prove at least some improper motive or improper means. A claim is CT Page 9489 made out only when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself.
While it is alleged that Terzi knew of Lark's contract and that PNS's hiring of Terzi would remove Lark as lead anchorman, he has not alleged that Terzi acted fraudulently or maliciously. Additionally, Lark does not allege that Terzi knew Lark would be fired from PNS, only that he would be removed from the 6:00 and 11:00 broadcasts. This is not sufficient to maintain a claim that Terzi tortiously interfered with Lark's contract. Motion to strike count eight is granted.
-VII-
Count Nine — Intentional Infliction of Emotional Distress
In count nine is directed at Terzi, Lark alleges that Terzi's action in seeking out and signing a contract was made intentionally to inflict emotional distress upon Lark and has caused Lark to suffer severe emotional distress, anguish, and anxiety.
The allegations in this count against Terzi are nearly identical to the allegations in the count six against PNS and the circumstances surrounding this count are the same as those in the sixth count against PNS. Because the plaintiff has not alleged facts indicating conduct sufficiently outrageous, the motion to strike count nine is granted.
-VIII-
Count Ten — Negligent Infliction of Emotional Distress
In count ten, Lark alleges that Terzi should have realized that his actions involved an unreasonable risk of causing emotional distress, and that the distress might result in damages to Lark.
Terzi maintains that the tenth count should be stricken because Lark has not or cannot establish that Terzi owed a duty to Lark or that Terzi intended to harm Lark and that Lark has not alleged serious enough conduct by Terzi or serious enough injuries suffered by Lark to maintain an action for CT Page 9490 emotional distress.
This count is nearly identical to the claims made against PNS in the count five. For the same reasons stated in connection with count five the motion to strike count ten is granted.
In summary the motion to strike count two is denied; the motions to strike counts three, five, six, seven, eight, nine and ten are granted.
Wagner, J.