[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT
The defendants have filed motions for summary judgment. The first motion seeks summary judgment as to counts one and two which allege retaliatory dismissal pursuant to C.G.S. § 290a and breach of implied contract. The second motion seeks summary judgment as to counts three and four which allege negligent infliction of emotional distress against the employer and intentional infliction of emotional distress against the immediate supervisor. We address both motions in this decision.
This action arises from the plaintiff, Marta Valencia's [Valencia] termination from her employment at defendant, St. Francis Hospital and Medical Center [St. Francis] on April 27, 1993.[1] From September 10, 1990 until her termination, Valencia was employed as a receptionist in the Obstetrics and Gynecology Clinic [OB/GYN]. Valencia alleges in her complaint that a critical performance evaluation written by her supervisor, Patricia Kubick [Kubick] spawned a combative and acrimonious relationship between the women. This relationship was further aggravated by Valencia's request for a reevaluation of her job performance on March 2, 1993. Kubick declined the request and wrote a memorandum to the Director of Ambulatory Nursing [Director] criticizing Valencia's work performance. On March 31, 1993, Valencia attended a meeting with the Director and Kubick where a patient's complaint CT Page 3954 against Valencia was discussed. Regarding this complaint, Valencia alleges on April 5, 1993, she was verbally and physically assaulted by Kubick at work causing her tremendous physical and emotional distress. That day, Valencia sought medical treatment at St. Francis for symptoms of acute anxiety, insomnia, poor appetite and heart palpitations and was diagnosed with a diagnosis of situational anxiety.
In the aftermath of this confrontation, Valencia was placed on unpaid suspension from April 6 to April 8, 1993 and ordered to report to work on April 12, 1993. On April 12, 1993, Valencia reported to work and met with Kubick and a resources administrator. After this meeting, Valencia was hospitalized at the psychiatric unit at St. Francis for work related stress from April 12 to April 19, 1993 and advised by her physician not to contact Kubick On April 13, 1993, Valencia contacted an employee at OB/GYN and requested that she inform Kubick of her whereabouts. On April 19, 1993, Valencia was released from St. Francis with a doctor's certification that she was not able to work and advised not to have any contact with Kubick. On April 26, 1993, Valencia, through her attorney, allegedly advised St. Francis that she was out of work due to a work related stress condition. On the same day, St. Francis, through Kubick, terminated Valencia's employment for absenteeism.
Valencia filed a four count revised complaint[2] on January 12, 1995 alleging that: (1) she was terminated by St. Francis in retaliation for filing a worker's compensation claim in violation of General Statutes § 31-290a; (2) her termination was a breach of an implied contract regarding medical leave; (3) St. Francis was negligent in that they knew or should have known that their conduct caused her severe emotional distress and (4) Kubick intentionally caused her severe emotional distress.
On February 27, 1995, the defendants filed a Motion for Summary Judgment as to counts one and two of the revised complaint. Attached to this motion, the defendants included a memorandum in support, the affidavit of William G. Walton, the Director of Human Resources at St. Francis and excerpts from Valencia's deposition transcript. Valencia filed a memorandum in opposition on October 13, 1995. On December 26, 1995, the defendants filed a second Motion for Summary Judgment as to counts three and four of the revised complaint. Attached to CT Page 3955 this motion, the defendants included a memorandum in support and excerpts from Valencia's deposition transcript. On February 14, 1995, Valencia filed a memorandum in opposition.
Practice Book § 384 provides that summary judgment, "shall be rendered forthwith if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Suarez v. Dickmont PlasticsCorp., 229 Conn. 99, 105 (1994). In deciding such a motion, the court must view the evidence in the light most favorable to the nonmoving party. Connecticut Bank Trust Co. v.Carriage Lane Associate, 219 Conn. 772, 780-81, 595 A.2d 334
(1991). The test to be applied by the court is whether, on the same facts, a party would be entitled to a directed verdict. Gabrielle v. Hospital of St. Raphael,33 Conn. App. 378, 382-83, 635 A.2d 1232, cert. denied,228 Conn. 928 (1994). The "party seeking summary judgment has the burden of showing the nonexistence of any material fact." (Citation omitted; internal quotation marks omitted.)Connecticut Bank Trust Co. v. Carriage Lane Associates, supra 219 Conn. 781. A material fact is one that will make a difference in the result of a case. Hammer v. Lumbermen'sMutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699 (1990). "[T]he party opposing [summary judgment] must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." Suarez v. Dickmont Plastics Corp., supra, 229 Conn. 105. A party's motion for summary judgment is "properly granted if it raises at least one legally sufficient defense that would bar the [opposing party's] claim and involves no triable issue of fact." Perille v. Raybestos-Manhattan-Europe,Inc., 196 Conn., 529, 543, 494, A.2d 555 (1985).
COUNT ONE — RETALIATORY DISCHARGE CLAIM
In her First Count, Valencia claims that St. Francis discharged her in violation of General Statutes § 31-290a
which provides; "[n]o employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for worker's compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter."
Valencia alleges that, "[p]rior to her termination, CT Page 3956 plaintiff's attorney, Richard Zayas, sent notice to defendant that plaintiff intended to file a worker's compensation claim for work stress and that any attempt to terminate her employment will be a violation of General Statutes § [31-290a]. After her termination, plaintiff filed a claim for worker's compensation benefits alleging work stress." Memorandum in Opposition, p. 4. St. Francis argues that on April 21, 1993, "[Valencia] did not contact [Kubick] that day . . . [Valencia] never contacted [Kubick] concerning her whereabouts or expected date of return . . . Although [Valencia] stated in her deposition that her attorney contacted [St. Francis] concerning her workers' compensation claim, [St. Francis] did [not] receive a correspondence from [Valencia's] attorney until April 28, 1992, two days after the date of [Kubick's] termination letter." Memorandum in Support, p. 5-6.
In Chiaia v. Pepperidge Farm, Inc., 24 Conn. App. 362,588 A.2d 652 (1991), the court held, "[g]eneral statutes § 31-290a
was designed to protect plaintiffs who file for worker's compensation benefits . . . . [t]he great majority of jurisdictions have recognized, either by statute or judicial decision, the tort of retaliatory discharge for the filing of a worker's compensation claim. Few courts, however, have expanded the definition of discriminatory discharge to include a discharge occasioned by the neutral application of an absence control policy to an employee who was injured and collected worker's compensation benefits." (Citations omitted.) Id., 366-367.
The Supreme Court has set forth the allocation of burdens of proof and order of presentation of proof in discrimination cases brought pursuant to § 31-290a in Ford v. Blue Cross Blue Shield of Connecticut, Inc., 216 Conn. 40, 578 A.2d 1054
(1990). "The plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination . . . . In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination . . . . If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions . . . . `If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level CT Page 3957 of specificity.' . . . . The plaintiff then must satisfy her burden of persuading the factfinder that she was the victim of discrimination by `either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Citations omitted.) Erisoty v. Merrow Machine Co., 34 Conn. App. 708,711 (1994).
"The plaintiff must present some evidence from which a trier of fact could infer that the employer discharged or discriminated against the employee because he or she had exercised his or her rights under the worker's Compensation Act . . . . Without some proof of an improper motive, a plaintiff's case must fail." (Citations omitted.) Chiaia v.Pepperidge Farm, Inc., supra, 24 Conn. App. 366.
Valencia concedes that the St. Francis absence control policy at issue applies to any of the defendant's employees who are absent from work for three days without contacting their supervisor or department head. See Memorandum in Opposition, p. 6; Valencia Deposition at p. 76. She further concedes that during her absence which commenced on April 12, 1993, she received the first of two letters from St. Francis regarding this absence. In her revised complaint, Valencia states that she was released from St. Francis on April 19, 1993. Valencia, who was aware of this policy, made no attempt to contact either Kubick or her Department Head upon her release from the hospital as to the status of her condition or the amount of time she planned to be absent from work. The first letter, dated on April 15, 1993 which was delivered and signed by Valencia on April 21, 1993, inquired as to her whereabouts and requested that she contact Kubick before her termination date of April 21, 1993. While she claims that she did not contact Kubick directly due to admonishments by her physician, she fails to explain why she did not attempt to contact Kubick through voice mail or contact any Department Head regarding her absence or make arrangements to have her attorney contact St. Francis at this time The second letter, dated April 26, 1993, was delivered and signed by Valencia on April 28, 1993. This letter informed her that she was terminated as of April 26, 1993 for failing to contact Kubick.
In order to support her claim of retaliatory dismissal, Valencia must demonstrate a cause-and-effect relationship CT Page 3958 between the exercise of her rights under worker's compensation and her subsequent termination. In her memorandum, Valencia claims that, "[p]rior to her termination, [her] attorney . . . sent notice to [St. Francis] that [Valencia] intended to file a worker's compensation claim for work stress." Memorandum in Opposition, p. 4. However, a perusal of the record indicates that the termination letter of April 26, 1993 was received by Valencia on April 28, 1993. On the same day, Valencia's letter, through her attorney, reached St. Francis. As Valencia's termination was effective "immediately," Valencia was terminated, at the latest, on the same day the hospital received notice of her claim, not two days earlier. Thus, her statement that St. Francis received notice of her intention to bring a worker's compensation claim prior to her termination is unsupported by the evidence.
Even if this court were to accept Valencia's argument that St. Francis received notice of claim prior to mailing her termination letter, the court must still consider the effect of the first letter dated April 21. This letter clearly stated that Valencia would be terminated as of April 21, if she failed to contact Kubick and was received approximately five days before the date of Valencia's letter to St. Francis and seven days before its actual delivery. In her deposition, Valencia stated that she did not contact anyone at St. Francis concerning her intent to bring a worker's compensation claim. (See Valencia Deposition at p. 76). In order to prove that St. Francis committed a `retaliatory' action against her, Valencia must demonstrate that St. Francis had notice of her intention to bring a worker's compensation claim prior to her discharge. The plaintiff's evidence does not support this conclusion.
In Chiaia v. Pepperidge Farm, Inc., supra, 24 Conn. App. 362, the court affirmed the decision of the worker's compensation commissioner who found that, "the defendant's absence control policy was neutrally applied to any of the defendants' [employees] who were absent from work . . . the plaintiffs had failed to sustain their burden of proving that they had been discharged because of discrimination or any retaliatory motive. The commissioner concluded that the sole reason for the plaintiff's discharge was their absence from employment . . . in contravention of the defendant's absence control policy." Id., 363-64. Valencia has failed to demonstrate any evidence to support the inference that she was fired for a reason other than absenteeism. Her alleged CT Page 3959 acrimonious relationship with Kubick does not, in itself, support her allegation of retaliatory discharge.
Accordingly, the plaintiff's claims under General Statutes § 31-290a must fail. The defendants' motion for summary judgment, as to this count, is granted.
COUNT TWO — BREACH OF IMPLIED CONTRACT
Valencia argues that the St. Francis employee handbook which provides income protection for employees on sick or medical leave created an implied contract between the hospital and its employees. She argues that the manual created an implied contract that St. Francis would not terminate Valencia's employment while she is on medical leave. The section entitled, Sick Leave, states in pertinent part: "[t]he purpose of this benefit program is to provide you protection against short term unexpected illness. This program is provided so that you may have income protection during brief periods of illness." Memorandum in Opposition, Exhibit D, p. 13. Valencia suggests that there are issues of fact as to whether an implied contract was created and whether Valencia violated the sick leave policy when her supervisor had constructive notice of her whereabouts. "In determining the terms of a contract, the intentions of the parties, manifested by their words and actions, are essential . . . . While we have recognized that, under appropriate circumstances, the terms of an employment manual may give rise to an express and implied contract between employer and employee . . . . in the absence of definitive contractual language, the question of whether the parties intended the manual to constitute part of the contract is a question of fact to be determined by the trier of fact." (Citations omitted.) Carbone v. AtlanticRichfield Co., 204 Conn. 460, 471-72, 528 A.2d 1137 (1987). "Typically, an implied contract of employment does not limit the terminability of an employee's employment but merely includes terms specifying wages, working hours, job responsibilities and the like. Thus, as a general rule, contracts of permanent employment, or for an indefinite term are terminable at will . . . . Absent a statutory warranty or definitive contract language, the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact." Torosyan v. Boehringer IngelheimPharmaceuticals, Inc., 234 Conn. 1, 14-15 (1995). No CT Page 3960 `definitive contractual language' was presented to raise an inference that the plaintiff's termination would be suspended if she was on sick leave. Valencia's argument that she relied to her detriment on this unwritten policy interpretation is also unsupported. By her own admissions, she stated she was never aware of any such policy at St. Francis. (See Valencia Deposition pp. 80-81). Valencia's failure to contact her supervisor, precludes her from raising this defense. There is no evidence to support the inference that her employer was aware that she was on sick leave. The termination letters she received requested that she provide actual, not constructive notice to her supervisor as to her whereabouts. Further, the employee manual clearly states, "[y]our supervisor may request and require at any time a physician's certificate of illness to determine eligibility for sick leave pay. Memorandum in Opposition, Exhibit D, P. 14.
This court finds that the plaintiff's proof is insufficient as a matter of law to support the inference that an implied contract was created in the employee manual precluding her discharge while on sick leave. Accordingly, the defendants' motion for summary judgment, as to this count, is granted.
COUNT THREE — NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS BY ST. FRANCIS
A cause of action for negligent infliction of emotional distress was first recognized by the Connecticut Supreme Court in Montinieri v. Southern New England Telephone Co.,175 Conn. 337, 398 A.2d 1180 (1978). See also Morris v. HartfordCourant Co., 200 Conn. 676, 683, 513 A.2d 66 (1986). Negligent infliction of emotional distress is applicable when a defendant should have realized that its conduct involved an unreasonable risk of causing the distress, and from the facts known to it, should have realized that the distress, if it were caused, might result in illness or bodily harm."Montinieri v. Southern New England Telephone Co.,
supra, 341. In addition, contrary to intentional infliction of emotional distress, "recovery for unintentionally-caused emotional distress does not depend on proof of either an ensuing physical injury or a risk of harm from physical impact." Id., 345. Therefore, the emotional distress "must be reasonable in light of the conduct of the defendants." Barrett v. DanburyHospital, 232 Conn. 242, 261, 654 A.2d 748 (1995). CT Page 3961
Valencia argues that St. Francis negligently inflicted emotional distress on her "as a result of its conduct arising out of [her] termination." Memorandum in Opposition dated February 12, 1996, p. 11. It is her contention that "[a]n employer's act in terminating an employee while the employee is hospitalized certainly satisfies the element of unreasonableness when, as here, the employer through its agents, servants and/or employees had knowledge of the employee's hospitalization." Memorandum in Opposition, dated February 11, 1996, p. 12. In support of this argument, Valencia cites as authority Fulco v. Norwich Roman CatholicDiocese, 27 Conn. App. 800, 609 A.2d 1034 (1992), cert.dismissed, 226 Conn. 404, 627 A.2d 931 (1993). This reliance is misplaced.
In Fulco, the plaintiff, like Valencia, contended that his personal injury (emotional distress) arose out of his discharge, not out of the conditions of his employment. The court analyzed the Worker's Compensation Act and held that, "[The Act] provides the exclusive remedy to employees seeking compensation for work related injuries or death from such injuries where (1) the plaintiff was an employee of the defendant, (2) the plaintiff suffered a personal injury and (3) the injury arose out of and in the course of the plaintiff's employment." Id., 807. The court further analyzed General Statutes § 31-275 (12) which defines, "arising out of and in the course of his employment" as "happening to an employee . . . while he has been engaged in the line of his duty in the business or affairs of the employer . . . . A personal injury shall not be deemed to arise out of the employment unless causally traceable to the employment . . . ." "`To occur in the course of the employment, the injury must take place (a) within the period of the employment, (b) at a place where the employee may reasonably be, and (c) while the employee is reasonably fulfilling the duties of the employment or doing something incident to it.'" Id., 808. The court concluded that "[t]he allegations of the plaintiff's complaint, if true, demonstrate that the plaintiff was neither within the period of his employment or doing something incidental to it when he sustained his alleged injury . . . . It is impossible for the injury to have arisen during the period of his employment because his employment necessarily terminated before the alleged injury arose. It would undulystrain the language of the statute for us to conclude thattermination of employment creates a job relatedCT Page 3962injury."(Emphasis added.) Id., 808.
Valencia's injury arose from her discharge and is therefore not actionable under Worker's Compensation. Valencia has failed to demonstrate sufficient facts to support her contention that St. Francis knew or should have known its conduct involved an unreasonable risk of causing Valencia distress and would result in illness or bodily harm.
Construing the facts in the plaintiff's favor, they merely demonstrate that St. Francis received information from a third-party that Valencia had been hospitalized on April 13, 1993. Conceding that the hospital had constructive notice of her absence, according to hospital policy requirements, Valencia had a duty to contact her supervisor directly. However, Valencia concedes that she was aware of the policy but chose not to contact her supervisor within the required time period. (See Valencia Deposition pp. 69-74). In Connecticut, the law is clear that an employment contract is presumed to be terminable at will. Magnan v. AnacondaIndustries, Inc., 193 Conn. 558, 563-69, 479 A.2d 781 (1984). Valencia has offered no evidence to support her claim that St. Francis had any duty to refrain from discharging her for her breach of an established absentee policy or that it acted unreasonably in doing so. As an employee at will there was no unreasonable risk' that was or should have been contemplated by St. Francis in connection with Valencias discharge. Therefore, the defendants' motion for summary judgment, as to this count, is granted.
COUNT FOUR — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY KUBICK
In Petyan v. Ellis, 200 Conn. 234, 510 A.2d 1337 (1986), the court held, "[i]n order for a plaintiff to prevail in a case for liability under [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendants conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Id., 253.
The sole issue before this court is whether Kubick's CT Page 3963 conduct was sufficiently `extreme and outrageous.' Valencia's reliance on Settembri v. American Radio Relay League,
Superior Court, Judicial District of Hartford-New Britain at Hartford, Docket No. 393198 (Schaller, J., 7 CSCR 483) is distinguishable and therefore persuasive.
In Settembri, the court found conduct to be `extreme and outrageous' when an employer demanded an injured employee to return to work or face termination. In the instant case, Kubick did not order Valencia to return to work. The letters sent to Valencia merely requested that she contact Kubick regarding her absence. Valencia's failure to contact Kubick, not return to work, was the reason for her termination. No evidence was presented by Valencia in support any other inference. "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action used upon intentional infliction of emotional distress . . . . [T]here is liability for conduct exceeding all bounds usually tolerated by a decent society, of nature which especially calculated to cause, and does cause, mental distress of a serious kind." (Citation omitted; internal quotation marks omitted.) Mellaly v. Eastman Kodak Company,42 Conn. Sup. 17, 19-20, 597 A.2d 373 (1991). "Only where reasonable minds differ does it become an issue for the jury." Id., 18. "The plaintiff must allege and prove conduct considerably more egregious than that experienced in the rough and tumble of everyday life." Whelan v. Whelan, 41 Conn. Sup. 519,522, 588 A.2d 251 (1991) . "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Citations omitted; internal quotation marks omitted.) Id., 523.
In the instant case, Valencia's allegations that Kubick "grabbed plaintiff's arm in front of patients and co-workers, pulled her in a back room and yelled at her", Memorandum in Opposition dated February 12, 1993, is insufficient to support this cause of action. In Stepney v. Devereux Foundation, Superior Court, judicial district of Litchfield, Docket No. 065885 (July 17, 1995, Pickett, J.), the court found that allegations which allege "nothing more than verbal abuse . . . do not appear to rise to the level of extreme and outrageous conduct under Connecticut law. The defendant's revised CT Page 3964 complaint simply does not allege conduct which shocks the conscience." Id.
Valencia argues that the embarrassment she suffered from these actions caused her severe emotional distress. This court concludes that the defendant's; conduct and the plaintiff's resulting distress are insufficient as a matter of law to satisfy the requisite elements for this claim. Accordingly, the defendants' motion for summary judgment on this count is granted.
Hennessey, J.