James ELLIOTT, et al.

v.

MAINE UNEMPLOYMENT INSURANCE COMMISSION et al.

Supreme Judicial Court of Maine.

Argued Nov. 9, 1984.

Decided Dec. 31, 1984.

Sunenblick, Fontaine & Reben, Donald F. Fontaine (orally), Portland, for plaintiffs.

James E. Tierney, Atty. Gen., Rufus E. Brown, Deputy Atty. Gen., Robert S. Frank, Asst. Atty. Gen. (orally), Augusta, for defendants.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and SCOLNIK, JJ.

NICHOLS, Justice.

The appeal before us presents an issue of first impression as to whether contingency factors may appropriately be included in the fees of attorneys who represent claimants for unemployment benefits.

The Defendants, the Maine Employment Security Commission and the Commissioner of Labor, appeal from an order of the Superior Court (Cumberland County), sustaining the appeals of the Plaintiffs, James Elliot and other claimants for employment security benefits, in eight cases that were heard before the Commission, reversing the Commission's decisions that denied awards for contingency factors in attorneys' fees pursuant to 26 M.R.S.A. § 1044(2) (Supp.1984–1985), and remanding to the Commission for further proceedings. The Commission argues that it is neither required nor authorized to consider contingency factors under section 1044(2). The Plaintiffs cross-appeal and challenge that portion of the Superior Court's decision that denied the Plaintiffs' request for additional fees for having prosecuted their claims concerning attorneys' fees.

We vacate the order remanding for consideration of contingency factors in attorneys' fees and dismiss the cross-appeal.

Eight cases brought against the Commission have been consolidated in this appeal. All the Plaintiffs, during their efforts to

obtain unemployment benefits, were represented, at least in part, by the law firm of Sunenblick, Fontaine & Reben. The fee arrangements between that firm and the Plaintiffs stipulated that the firm would receive its fees from the Commission should the Plaintiffs succeed on appeal. Apparently, the firm would recover no fees for its appellate services in the event that an appeal failed.

We do not need to set forth here the full underlying facts of the eight cases involved in this appeal since the only issue here presented is the propriety or necessity of considering contingency factors in setting attorneys' fees. These were "risk percentages," allegedly reflecting the odds that an appeal would not succeed,[1] in attorneys' fees under section 1044(2).[2] The chart set forth below reflects the benefits with which the Plaintiffs were ultimately provided, the attorneys' fees that were requested, and the fees, including payment for disbursements, that were awarded by the Commission. It does not, however, incorporate the hours expended or expenses incurred in litigating the fee question.

| CLIENT | HOURS | FIRM'S BASE FEE | REQUESTED CONTINGENCY FACTOR | TOTAL FEE REQUESTED | AWARD TO CLAIMANT | AWARD TO ATTORNEY |
|---|---|---|---|---|---|---|
| Coates | 36 | $1,449.00 | 100% | $ 2,938.00 | $ 700.00 | $ 1,449.00 |
| Welsh | 9.9 | 435.00 | 100% | 875.10 | 2,064.00 | 440.10 |
| Elliot | 9.5 | 371.00 | 100% | 748.60 | 1,892.00 | 377.60 |
| Carle | 8.1 | 341.50 | 100% | 707.60 | 849.00 | 366.10 |
| Bissonette | 32.1 | 1,614.00 | 25% | 2,026.70 | 768.00 | 1,623.70 |
| Brooking | 80.4 | 5,679.00 | 25% | 7,366.61 | 736.00 | 5,946.73 |
| Curit | 29.7 | 1,621.00 | 10% | 1,787.30 | 2,147.00 | 1,625.20 |
| Champagne | 60.5 | 3,454.50 | 90% | 6,611.05 | 1,976.00 | 3,502.00 |
| TOTAL | | | | $23,060.96 | $11,132.00 | $15,330.43 |

The Commission, in January 1983, in an effort to comply with *Coates v. Maine Employment Security Commission*, 428 A.2d 423, 426 (Me.1981), by developing clear and adequate findings of fact on the record, held further hearings on the claims for attorneys' fees in each of the cases. The Plaintiffs presented live testimony of the law firm's attorneys and a transcript of testimony given in another case by an attorney expert in law office economics. The Commission's orders dated May 12, 1983 affirmed its original decisions.

The Plaintiffs thereupon appealed to the Superior Court, arguing that Sunenblick, Fontaine & Reben was entitled to the requested contingency factor in each case. Pursuant to a motion by the Plaintiffs, the cases were consolidated. The Plaintiffs sought an order remanding the case to the Commission for entry of the contingency factors. In addition, the Plaintiffs requested that the Superior Court order the Commission to award $1,764.00 to the law firm for its costs in litigating the fee question before the Commission. The Plaintiffs

1. If, for example, a plaintiff was estimated to have had a 50–50 chance of succeeding on appeal the contingency factor would be 100 percent of the base fee—the total fee would be the base fee times two. *See* Leubsdorf, *The Contingency Factor in Attorney Fee Awards,* 90 Yale L.J. 473 (1981) (discussing contingency factor awards and the inherent problems in determining the "chances of winning on appeal").

2. 26 M.R.S.A. § 1044(2) (Supp.1984–1985) provides in pertinent part:

Any individual claiming benefits in any proceeding before the commission or a court may be represented by counsel or other duly authorized agent; but no such counsel or agent shall either charge or receive for such services more than an amount approved by the commission. In the event a claimant has retained counsel for the purpose of prosecuting an appeal from a decision of the commission, and the final decision of such court results in a reversal, in whole or in part, of the decision appealed from, the fees for such service shall be paid by the commissioner from his administrative fund.

asked for an additional sum to cover fees for the appeal to the Superior Court.

The Commission contended that 26 M.R.S.A. § 1044(2) (Supp.1984–1985) did not require or authorize the awarding of contingency factors in attorneys' fees and that it had acted within its discretion in setting the fees. The Commission also opposed the Plaintiffs' request for still further fees for prosecuting the fee claims.

On March 3, 1984, the Superior Court reversed the Commission's decisions in all eight cases. The Superior Court determined, as a matter of law, that the Commission was required to consider contingency factors in awarding attorneys' fees under section 1044(2). The Superior Court remanded the case to the Commission for further proceedings and affirmed that part of the Commission's decision denying additional attorneys' fees for prosecuting the fee claims. Two days later the Plaintiffs moved in Superior Court to alter the judgment by ordering the Commission to pay for costs and fees in presenting its appeal before that court. Their motion was denied.

The Commission seasonably entered this appeal. The Plaintiffs cross-appeal from the Superior Court's decision denying them attorneys' fees for prosecuting the appeal from the Commission.

■ The language of 26 M.R.S.A. § 1044(2) itself offers little guidance to the Commission in setting attorneys' fees. This Court has emphasized that the Commission has the "exclusive responsibility for fixing any fees to be paid a claimant's attorney in connection with a successful unemployment compensation appeal." *Coates v. Maine Employment Security Commission*, 428 A.2d 423, 426 (Me.1981). The Commission has the discretion to make a "reasonable" award and unless its findings are arbitrary, capricious or unsupported by the evidence before it, its decision should be affirmed. *See* 5 M.R.S.A. § 11007 (1979) (Administrative Procedure Act).

The narrow issue presented by the Commission is whether "a reasonable award" necessarily includes consideration of a contingency factor [3] reflecting the risk taken by attorneys that they will not be compensated for their appellate services. The dispute over whether the Commission is required to consider contingency factors could arise from an interpretation of a footnote in *Coates* in which we cited *Northcross v. Board of Educ. of Memphis City Schools*, 611 F.2d 624 (6th Cir.1979). 428 A.2d at 426 n. 4. That reference to *Northcross* was premised on a directive to the Commission to "make 'clear and adequate findings of fact on [that] record' with respect to both hours of service provided and the hourly rate at which the service should be billed." *Id.* (citing *Northcross*, 611 F.2d at 636, 636–639). As such, we sought to guide the Commission on providing a sufficient record for appeal, not to require it to apply every factor that the *Northcross* court found pertinent in its review of attorneys' fees in civil rights cases.

■ Because the language of section 1044(2) is of little help in determining whether contingency factors must be considered by the Commission, we look to the available legislative history. The legislative history reveals that the efforts behind establishing the payment of attorneys' fees concentrated on balancing the desirability of having claimants better able to obtain counsel for their appeals against the possibility that frivolous appeals would become more popular. *See* Legis.Rec. 2001 (1965) (Statement of Sen. Brennan). The balance is an important one, a balance which would

---

**3.** We recognize that terms other than "contingency factors" have been adopted by different courts. *See e.g., Blum v. Stenson*, — U.S. —, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) ("upward adjustment"); *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4 (D.C.Cir.1984) ("contingency multipliers"); *Northcross v. Board of Educ. of Memphis City Schools*, 611 F.2d 624 (6th Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1981) ("contingency adjustments" and "contingency factors").

be lost were we to require the Commission to compensate attorneys in the form of contingency factor awards.

A contingency factor award, in the context of attorneys' fees under section 1044(2), would, in effect, be compensation to the attorneys for other cases that have failed on appeal. While it is plausible that the attorneys in these cases could have lost on their appeals, they did not, and the requested contingency factors therefore can only be seen as a means to counter those cases where the same attorneys have been less fortunate in overcoming the risks, some of which may have bordered on the frivolous.[4] Clearly section 1044(2) only authorizes the Commission to award attorneys' fees for claimants' *successful* appeals. Unlike the traditional contingent fee arrangements often utilized in tort actions, upward adjustments, such as those sought by the Plaintiffs herein, have no proportional relation whatsoever to the benefits awarded them. *See Copeland v. Marshall*, 641 F.2d 880, 893 (D.C.Cir.1980) (en banc).[5]

Our result in the case at bar is wholly consistent with both our past decisions and the federal cases that have recognized contingency factor awards in civil rights litigation. In *Poussard v. Commercial Credit Plan, Inc.*, 479 A.2d 881, 884 (Me.1984), we recently addressed issues concerning the awarding of attorneys' fees in a consumer protection action; there we noted that the

Superior Court had correctly relied on the factors outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974) in setting a reasonable fee. The *Johnson* factors that we recited included "whether the fee is fixed or contingent." *Poussard*, 479 A.2d at 884. Tracing this factor back to its original source, we find that the *Johnson* court offered the following definition: "the fee quoted to the client or the *percentage of the recovery agreed to ....*" *Johnson*, 488 F.2d at 718 (emphasis added). There is no indication that "contingency factors," as those terms are used in the present analysis, are reasonably encompassed by the *Johnson* court's definition. Moreover, we did not intimate such an interpretation in *Poussard* or *Coates*.

■ Although federal civil rights litigation involving 42 U.S.C. §§ 1983 and 1988 has prompted a number of courts to authorize contingency factor awards in attorneys' fees, we find marked differences between the purposes behind our statute governing attorneys' fees in unemployment compensation cases and those authorizing attorneys' fees in civil rights actions. The primary goal of congressional enactments authorizing courts to award attorneys' fees to successful litigants in civil rights cases has been to encourage attorneys to effectuate policies against discrimination by acting as private attorneys general.[6] The United

---

4. The United States Court of Appeals for the District of Columbia recently rejected a contingency factor award and stated the following in its reasoning:

> The same logic which restricts compensation to those portions of a lawsuit directly related to the relief procured also forbids multiplying attorneys fees so as effectively to compensate for other, losing claims which may be brought .... [T]here is no provision for compensating losing, unrelated claims in the same case, or other cases which might or might not involve the same parties. Any crude multiplier derived simply from the plaintiff's chance of success must be rejected as contrary to the congressional scheme.

> *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 27–28 (D.C.Cir.1984).

5. The *Copeland* court noted, "[w]e have not lost sight of the fact that this adjustment is inherently imprecise .... [I]t is difficult in hindsight to determine the risk of failure at the commencement of a lawsuit that ultimately proved to be successful." 641 F.2d at 893.

6. *See Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 263, 95 S.Ct. 1612, 1624, 44 L.Ed.2d 141, 156 (1975); *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 401–402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968); *Copeland v. Marshall*, 641 F.2d 880, 889 (D.C.Cir.1980) (en banc); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 716 (5th Cir.1974); *but see Blum v. Stenson*, — U.S. —, —, n. 10, 104 S.Ct. 1541, 1546 n. 10, 79 L.Ed.2d 891, 899, n. 10 (1984) (the United States Supreme Court implied that the "private attorney general theory" no longer prevails).

States Supreme Court explained the following:

When the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law. A Title II suit is thus private in form only.... If [a plaintiff] obtains an injunction, he does so not for himself alone but also as a "private attorney general," vindicating a policy that Congress considered of the highest priority.

*Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 401–402, 88 S.Ct. 964, 966–67, 19 L.Ed.2d 1263 (1968) (footnotes omitted).

 Unlike the defendants named in civil rights cases, the defendant in unemployment security cases, the Commission, is entrusted with the authority to both interpret and apply the law when disputes arise. We see no incentive for the Commission to violate the law it is charged with administering. Attorneys representing plaintiffs in civil rights causes are, however, very often forced to confront defendants that have knowingly and purposefully violated the law for some gain. As such, it can be understood how the possibility of contingency factor awards might attract certain competent attorneys that would not otherwise be willing to assume a complex civil rights case.[7] However, we reject any argument that contingency factor awards are essential to attracting competent counsel in cases brought against the Commission. Plaintiffs in those cases are not acting as private attorneys general by seeking vindication of public policies that have a significant effect on society as a whole. We decline, therefore, to recognize contingency factor awards that would be windfalls and would lack any mathematical precision in their calculation.

Finally, we find no merit in the Plaintiffs' claim that they should be compensated for litigating the fee dispute. Section 1044(2) does not authorize the Commission to award fees to cover the litigation involved in contesting a fee award. The Superior Court correctly found that "the intent of the statute was to aid the claimant and not the lawyer."

As we noted in *Poussard,* attorneys' fees may be awarded only when provided for by statute or agreement by the parties. 479 A.2d 881, 883 (Me.1984). Our decision in *Wyman v. Inhabitants of Skowhegan,* 464 A.2d 181, 186 (Me.1983) allowing attorneys' fees for time spent on appealing a fee petition was grounded in a civil rights action and is thus, as noted above, distinguishable from the case at hand. It is unfortunate that a second major litigation on fees ensued in this case, but the Plaintiffs cannot now look to section 1044(2) for further compensation for their attorneys.

The entry is:

Appeal sustained.

Order remanding for consideration of contingency factor awards in attorneys' fees vacated.

Remanded for entry of order affirming the decisions by the Commission.

Plaintiffs' cross-appeal for attorneys' fees in litigating the fees claims dismissed.

All concurring.

---

**7.** Even though contingency factor awards have been recognized by some courts reviewing civil rights cases, it appears from recent United States Supreme Court decisions that such enhancements are to be reserved for *exceptional* cases. *Blum v. Stenson,* —— U.S. ——, ——, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891, 900 (1984) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40, 51 (1983)).