[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The issue before the court on the defendants' motion to strike is whether the plaintiff, an instructor in aircraft maintenance employed by Sikorsky Aircraft and a member of the project team that built a nonmilitary helicopter for the Crowned Prince of Bahrain, may, though an at-will employee, maintain an action for wrongful discharge, intentional infliction of emotional distress, or negligent infliction of emotional distress for being fired and given a security escort out of the building after refusing to travel to Bahrain to CT Page 1756 instruct the Bahrain flight crew on repair and maintenance of the aircraft during the 1990 Middle East "Desert Shield" military buildup to the 1991 Gulf War. This court holds that the plaintiff may not maintain such an action. The motion to strike is granted as to all three counts.
The plaintiff, Gary F. Parsons, brings this action to recover for the alleged wrongful termination of his employment by his former employer, the defendant, Sikorsky Aircraft Division, United Technologies Corporation (Sikorsky). Also named as a defendant is Robert Osborn, the plaintiff's former supervisor. Sikorsky, it is alleged, is in the business of manufacturing, distributing and servicing helicopters and other related products. The plaintiff, an at will employee, was employed by Sikorsky as an aircraft maintenance instructor from August 29, 1986 until September 18, 1990.
In the seventh revised amended complaint, the plaintiff alleges that in September 1990, he was a member of a project team that built a non-military helicopter for the Crowned Prince of Bahrain. On September 11, 1990, the plaintiff's supervisor, Osborn, assigned the plaintiff to instruct members of the Bahrainian helicopter crew regarding the proper maintenance and repair of the helicopter. The plaintiff alleges that the Bahrainians were supposed to come to the United States to receive their instructions from the plaintiff.
The plaintiff claims that on September 12, 1990, he was told that he would be required to travel to a military base located in Bahrain in order to instruct the Bahrainian flight crew. At or about this time, the United States of America and certain allied nations, including Bahrain, were involved in a joint military action taken in response to the invasion of Kuwait by Iraq, known as "Operation Desert Shield." The plaintiff alleges that the military base was the headquarters for the Bahrain Defense Force, as well as a "staging area" for "Allied" warplanes.
The plaintiff alleges that on September 13, 1990, he became aware of a "travel advisory" warning issued by the United States Department of State, which provided in pertinent part: "Due to the Iraqi military invasion of Kuwait and continuing unstable conditions in the region, the Department of State advises all Americans to defer all non-essential CT Page 1757 travel to the eastern province of Saudi Arabia, and to Qatar, Bahrain, and the United Arab Emirates. The Department is permitting dependents of U.S. government officials to depart the area on a voluntary basis. The Department of State advises other American citizens in the area to consider doing the same. . . ."
On September 18, 1990, the plaintiff informed Sikorsky that he refused to travel to Bahrain due to the increased terrorist activities in the area and the travel warning issued by the State Department. As a result, Sikorsky immediately terminated the plaintiff's employment.
In the first count of the seventh revised amended complaint, the plaintiff asserts a wrongful termination claim based on allegations that his termination violated Connecticut's public policy requiring an employer to exercise reasonable care to provide its employees with a reasonably safe place to work. The plaintiff alleges that this public policy is primarily evidenced by the language of General Statutes § 31-370, as well as by other statutes which regulate the work environment. In the second count, the plaintiff asserts a claim for intentional infliction of emotional distress. In the third count, the plaintiff asserts a claim for negligent infliction of emotional distress.
The defendants have filed a motion to strike the plaintiff's seventh revised amended complaint. The defendants move to strike the plaintiff's claim for wrongful discharge of an at-will employee in violation of public policy, asserted in the first count, on the grounds that: (1) the statutes cited by the plaintiff as giving rise to public policy only provide public policy within Connecticut; (2) the statutes cited by the plaintiff as giving rise to public policy do not provide a basis for an independent action for wrongful discharge; and (3) the first count of the seventh revised amended complaint is virtually the same as the count that was stricken when the court (Ford, J.) granted the defendants' motion to strike the plaintiff's fifth revised amended complaint. The defendants move to strike the second count, in which the plaintiff asserts a claim for intentional infliction of emotional distress on the ground that this claim, as alleged in the seventh revised amended complaint, is substantially similar to the claim which was stricken when the court (Ford, J.) granted the defendants' motion to strike the plaintiff's fifth amended CT Page 1758 complaint. The defendants move to strike the third count, in which the plaintiff asserts a claim for negligent infliction of emotional distress, on the ground that the plaintiff fails to allege a factual basis or some special circumstances upon which the defendants should have anticipated that the plaintiff would suffer emotional distress because of the lawful termination of his employment.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Novametrix MedicalSystems, Inc. v. BOC Group, Inc., 224 Conn. 210, 214,618 A.2d 25 (1992). In ruling on a motion to strike, the court is limited to the facts alleged in the pleading; Rowe v. Godou,209 Conn. 273, 278, 550 A.2d 1073 (1988); which must be construed in the light most favorable to the pleader. RKConstructors, Inc. v. Fusco Corp. , 231 Conn. 381, 384,650 A.2d 153 (1994). "If facts provable under the allegations would support a defense or cause of action, the motion to strike must be denied." Ibid.
 I
The defendants move to strike the plaintiff's claim for wrongful discharge of an at-will employee in violation of public policy, asserted in the first count, on the grounds that: (1) the statutes cited by the plaintiff as giving rise to public policy only provide public policy within Connecticut; (2) the statutes cited by the plaintiff as giving rise to public policy do not provide a basis for an independent action for wrongful discharge; and (3) the first count of the seventh revised amended complaint is virtually the same as the count that was stricken when the court (Ford, J.) granted the defendants' motion to strike the plaintiff's fifth revised amended complaint.
In response, the plaintiff argues that his claim for wrongful termination is legally sufficient because he alleges that the termination was in violation of the public policy which requires employers to furnish their employees with a safe place to work. The plaintiff further contends that the public policy which requires employers to provide a safe workplace for their employees extends beyond the borders of Connecticut. CT Page 1759
 A
This court will first address the defendants' argument that the first count of the complaint now before the court is substantially similar to that which was previously stricken by the court. When a motion to strike is granted, the losing party may take one of two courses of action. He may amend his pleading, or he may stand on his original pleading, allow judgment to be rendered against him, and appeal the granting of the motion to strike. The choices are mutually exclusive. The filing of an amended pleading operates as a waiver of the right to claim that there was error in the granting of the motion to strike. Royce v. Westport, 183 Conn. 17, 178-179,419 A.2d 298 (1981). If the amended pleading is the same in substance as the pleading which was stricken, then the amended pleading may be expunged on a request to revise pursuant to Practice Book § 147(2). Id., 180-181. In fact, after their earlier motion to strike had been granted and the plaintiff had filed an amended complaint, the defendants did file a request to revise, requesting, as did the defendant in Royce, that the plaintiff delete the first count of the amended pleading in its entirety because it was substantially similar to the complaint that was stricken. The court (S. Freedman,J.) sustained the plaintiff's objection, stating that the request was "too broad and in the nature of a motion to strike." This court, however, is not bound by that ruling.Breen v. Phelps, 186 Conn. 86, 99-100, 439 A.2d 1066 (1982).
In paragraph six of his fifth amended revised complaint, the plaintiff alleged that he was told by the defendant Osborn that he "would be required to travel to Bahrain on or about September 20, 1990, in order to implement the repair and maintenance program to the Bahrain crew, rather than in the United States as previously stated." In repleading his wrongful termination claim in the seventh revised amended complaint, the plaintiff alleges that: "Gary F. Parsons was told by Osborn that Mr. Parsons would instead be required to travel to the `Headquarters, Bahrain Defense Force,' a military installation located near the capital city; and the main staging area for Allied warplanes on the island of Bahrain. . . . Mr. Parsons was to give instruction, sleep and eat all his meals at this one installation. . . . He was at all times acting within the scope of his employment, both during his transportation to and from the airbase, and while CT Page 1760 teaching and residing at the airbase facility. . . ."
Whether the complaint before the court is the same in substance as that which was stricken by the court must be determined in the context of the court's decision holding the first count of the fifth revised amended complaint to be legally insufficient. In striking the first count of the plaintiff's fifth revised amended complaint, the court (Ford,J.) ruled that: "The plaintiff fails to allege that Sikorsky owned, operated or managed a `workplace' or `place of employment' in Bahrain. Rather, the plaintiff alleges that Sikorsky required him to travel to Bahrain. . . . The plaintiff does not allege that the `workplace' or `place of employment' in Bahrain was unreasonably unsafe or suffered from some hazardous condition. The plaintiff alleges that [the entire nation] of Bahrain . . . was unsafe . . . . Expanding the definition of work place or place of employment to include a whole country is beyond the contemplation of the statutes. . . ." The plaintiff's seventh amended revised complaint does not cure this legal insufficiency. Although the seventh revised amended complaint does identify the place in Bahrain to which the plaintiff was told to travel — "the `Headquarters, Bahrain Defense Force,' a military installation located near the capital city; and the main staging area for Allied warplanes on the island of Bahrain" — it does not allege that Sikorsky owned, managed or operated that facility in Bahrain nor that that place was more dangerous in September 1990 than any other in Bahrain.[1]
 B
Even were the court to reach the merits of the first count, the plaintiff could not prevail.[2] Generally, employment contracts which are for an indefinite term or duration are terminable at the will of either party. Torosyan v. BoehringerIngelheim Pharmaceuticals, Inc., 234 Conn. 1, 14, 662 A.2d 89
(1995); Coelho v. Posi-Seal International, 208 Conn. 106,118, 544 A.2d 170 (1980). Connecticut, like some other states, has recognized "a narrow public policy exception to the general rules governing the termination of an at will employment relationship. " Carbone v. Atlantic Richfield Co.,204 Conn. 460, 467, 528 A.2d 1137 (1987). "[A] common law cause of action in tort for the discharge of an at will employee [exists] `if the former employee can prove a demonstrably improper reason for dismissal, a reason whose CT Page 1761impropriety is derived from some important violation of public policy.'" (Emphasis in original.) Id., 466-67, quoting Sheetsv. Teddy's Frosted Foods, Inc., 179 Conn. 471, 475,427 A.2d 385 (1980).
"This public policy exception to the employment at will rule carved out in [Sheets v. Teddy's Frosted Foods, Inc., supra,] attempts to balance the competing interests of employer and employee. Under the exception, the employee has the burden of pleading and proving that his dismissal occurred for a reason violating public policy. The employer is allowed, in ordinary circumstances, to make personnel decisions without fear of incurring civil liability. Employee job security, however, is protected against employer actions that contravene public policy." Morris v. Hartford Courant Co., 200 Conn. 676,679, 513 A.2d 66 (1986). "The issue then becomes the familiar common law problem of deciding where and how to draw the line between claims that genuinely involve the mandates of public policy and are actionable, and ordinary disputes between employee and employer that are not. We are mindful that courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation."Sheets v. Teddy's Frosted Foods, Inc., supra, 179 Conn. 477.
"Given the inherent vagueness of the concept of public policy, it is often difficult to define precisely the contours of the exception." Morris v. Hartford Courant Co., supra,200 Conn. 680. However, the Supreme Court repeatedly has "refused to enlarge the circumstances under which an employee at will may successfully challenge his dismissal beyond the situation where the reason for his discharge involves impropriety
derived from some important violation of a public policy." (Emphasis added.) Carbone v. Atlantic Richfield Co., supra,204 Conn. 469-470, quoting Morris v. Hartford Courant Co., supra, 200 Conn. 679n. 2, citing Magnan v. AnacondaIndustries, Inc., 193 Conn. 558, 572, 479 A.2d 781 (1984). Also, in the context of avoiding an arbitration award on the basis of public policy, the Supreme Court has stated that the public policy exception "is limited to situations where the [collective bargaining agreement] as interpreted would violate `some explicit public policy' that is `well defined anddominant, and is to be ascertained `by reference to the laws and legal precedents and not from general considerations ofsupposed public interests.'"(Emphasis added.) New Haven v.AFSCME, Council 15, Local 530, 208 Conn. 411, 417, CT Page 1762544 A.2d 186 (1988).[3]
The plaintiff alleges that the termination of his employment by the defendants "was demonstrably improper and in violation of the State of Connecticut's public policy requiring an employer to exercise reasonable care to provide employees with a reasonably safe place to work. This public policy," the plaintiff claims, "is demonstrated . . . by Connecticut General Statutes § 31-370 . . . and by § 31-49. . . ."[4] The plaintiff further alleges that his expressed desire not to enter the Persian Gulf region during Operation Desert Shield was an attempt to further the public policy which requires an employer to exercise reasonable care to provide employees with a reasonably safe place to work.
General Statutes § 31-370 provides in pertinent part: "(a) Each employer shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees. . . ." Section 31-369 provides in pertinent part that: "(a) This chapter applies to all employers, employees and places ofemployment in this state except the following: (1) Employees of the United States government; and (2) working conditions of employees over which federal agencies other than the United States Department of Labor exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety and health." (Emphasis added.) In Wendlandv. Ridgefield Construction Services, Inc., 184 Conn. 173,439 A.2d 954 (1981), the court held that "where an employer is in control of an area and responsible for its maintenance . . . a violation occurs if any employee working on the project has access to the hazard. Brennan v. Underhill, [513 F.2d 1032,1037-38 (2d Cir. 1975)]. See General Statutes § 31-370(c);Beatty Equipment Leasing v. Secretary of Labor, 577 F.2d 534,536-37 (9th Cir. 1978)." Id., 177.
General Statutes § 31-49 provides in pertinent part that: "It shall be the duty of the master to exercise reasonable care to provide for his servant a reasonably safe place in which to work, reasonably safe appliances and instrumentalities for his work and fit and competent person as his co-laborers and to exercise reasonable care in the appointment or designation of a vice-principal. . . ." "[Section] 31-49 is expressly included among those employment CT Page 1763 regulation statutes that the labor commissioner has a statutory duty to enforce `by giving proper orders or notices to the persons or corporations owning, operating or managing the factories or buildings inspected by him and shall make complaint to the state's attorneys of any violation of said provisions.' General Statutes § 31-50." Perille v.Raybestos-Manhattan-Europe, Inc., 196 Conn. 529, 545, 494 A.2d 555
(1985)(Shea, J., concurring).
The various statutes cited by the plaintiff for purposes of establishing a public policy, including General Statutes §31-370 of the Occupational Safety and Health Act (Chapter 571 of the General Statutes) and General Statutes § 31-49, apply only to a place of employment or workplace which is located within Connecticut and owned, controlled or maintained by the employer. Assuming that these statutes create a clear mandate of public policy,[5] that policy would require an employer who owns, controls or maintains a workplace within Connecticut to abate certain safety violations and hazardous conditions, and provide a reasonably safe "Connecticut workplace" for its employees.
The plaintiff alleges that he was "required to travel to the `Headquarters, Bahrain Defense Force,' a military installation" which was "the main staging area for Allied warplanes on the island of Bahrain." The plaintiff further alleges that "he was at all times acting within the scope of his employment, both during his transportation to and from the airbase, and while teaching and residing at the airbase facility."
Reading the allegations of the complaint in the light most favorable to the pleader, the plaintiff fails to allege that Sikorsky owned, controlled or maintained a workplace in Bahrain. Even assuming arguendo that Sikorsky did so, the statutes cited by the plaintiff do not express a public policy which would prohibit an employer from requiring an employee to travel to a foreign country where there may be some type of instability or military threat.
The plaintiff relies on D'Angelo v. Gardner, 107 Nev. 704,819 P.2d 206 (1991), to support his argument that it is violative of public policy for an employer to discharge an employee for refusing to work under conditions which are unreasonably dangerous to the employee. In D'Angelo, the CT Page 1764 discharged employee, Jones, a heavy equipment operator, declined to work a temporary assignment in the employer's "cyanide leach pit" because at the time he was assigned to work in the pit, he had an open surgical wound. Id., 213. Evidence presented during trial established that the employer had a safety policy that prohibited employees with open wounds from being exposed to cyanide because of the increased danger that the cyanide would be absorbed into the body. Ibid. The court held that Jones' refusal was justified because of the danger presented to him by the cyanide leach pit and because such a work assignment, when given to an employee with an open wound, was in violation of the employer's safety policy; id., 214; as well as in violation of Nevada's public policy. Id., 216.
D'Angelo is factually and legally distinguishable from the present case for several reasons. In D'Angelo, the discharged employee had a physical injury or condition that made his work assignment in the cyanide pit a clear and palpable danger to his health. The discharged employee also established that the employer violated its own safety policy by assigning him to work in the cyanide pit. The plaintiff here has not made such allegations.
Moreover, in D'Angelo, the discharged employee identified state statutes which established a clear policy against forcing employees to work under unreasonably dangerous conditions. Id., 216. The court held that the pertinent statute: "requires that all employers adopt practices which insure safe employment and that employers do everything reasonably necessary to protect the lives, safety and health of their employees. [The statute] expressly prohibits employers from requiring employees `to go or be in any . . . place of employment which is not safe and healthful' . . . ." Id. The Nevada statutes use language which is much broader in scope than the language used in the Connecticut statutory provisions cited by the plaintiff.[6]
As an at will employee, the plaintiff was entitled to refuse his employer's order to travel to Bahrain during the military buildup in the Persian Gulf. However, because the plaintiff was an at will employee, the defendants were entitled to terminate his employment for that very reason. The plaintiff has failed to identify any impropriety in his termination by the defendants derived from some important CT Page 1765 violation of a public policy. Carbone v. Atlantic RichfieldCo., supra, 204 Conn. 470. A claim for wrongful termination will not lie where the termination of an employee at will does not violate a clear mandate of public policy. Accordingly, the court grants the defendants' motion to strike the first count of the plaintiff's seventh revised amended complaint.[7]
 II
The defendants move to strike the second count, in which the plaintiff asserts a claim for intentional infliction of emotional distress based on the same facts alleged in the first count. The defendants contend that this claim, as alleged in the seventh revised amended complaint, is substantially similar to the claim which was stricken when the court (Ford, J.) granted the defendants' motion to strike the plaintiff's fifth revised amended complaint. The court agrees but, as with the first count, the court will again address the merits of the parties' claims. See note 2, supra.
The plaintiff argues that he has sufficiently pleaded the elements necessary to set forth a legally sufficient claim for intentional infliction of emotional distress. In Morris v.Hartford Courant Co., supra, 200 Conn. 682 n. 4, the Supreme Court held that "the employment at will rule does not [necessarily] prohibit an action for infliction of emotional distress. . . ." However, to be actionable, there must be extreme and outrageous conduct; "[t]ermination of employment ordinarily does not create a tortious cause of action." Sheetsv. Knight, 308 Or. 220, 330-331, 779 P.2d 1010 (1989). In order for a plaintiff to state a claim for intentional infliction of emotional distress, "`[i]t must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. Hiers v.Cohen, 31 Conn. Sup. 305, 329 A.2d 609 (1973); 1 Restatement (Second), Torts § 46.' Petyan v. Ellis, [200 Conn. 243, 253,510 A.2d 1337 (1986)], quoting Murray v. Bridgeport Hospital,40 Conn. Sup. 56, 62, 480 A.2d 610 (1984)." (Internal quotation marks omitted.) DeLaurentis v. New Haven,220 Conn. 225, 266-67, 597 A.2d 807 (1991). "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient CT Page 1766 to satisfy either of these elements is a question, in the first instance, for [the] court. Only where reasonable minds can differ does it become an issue for the jury. Reed v.Signode Corporation, 652 F. Sup. 129, 137 (D. Conn. 1986); 1 Restatement (Second), Torts § 46, comment (h) (on the issue of extreme and outrageous conduct) and comment (j) (on the issue of severe emotional distress). Since the defendant raises these issues by a motion to strike, the court is limited to the facts alleged in the complaint. King v. Board ofEducation, 195 Conn. 90, 93, 486 A.2d 111 (1985)." Mellaly v.Eastman Kodak Co., 42 Conn. Sup. 17, 19-20, 597 A.2d 846
(1991)(Berdon, J.).
"The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." Mandani v. Kendall Ford, Inc., 312 Or. 198,818 P.2d 930, 934 (1991). Termination of employment is a relatively commonplace event. It is likely that a person whose employment is terminated will suffer some degree of stress and anxiety regardless of whether the termination was lawful and proper or wrongful and tortious in nature. Intentional, like "[n]egligent infliction of emotional distress in the employment context arises only where it is `based upon . . . conduct of the defendant in the termination process.' Morrisv. Hartford Courant Co., 200 Conn. 676, 681-82, 513 A.2d 66." (Emphasis added.) Lund v. Stern Company, Inc., Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 463413 (1995). Thus, to state a legally sufficient claim for intentional infliction of emotional distress arising out of an allegedly wrongful termination of employment, there must be allegations that the employer otherwise engaged in some extreme and outrageous conduct "exceeding all bounds usually tolerated by decent society";Petyan v. Ellis, supra, 200 Conn. 254 n. 5, quoting Prosser 
Keeton, Torts (5th Ed.) § 12 p. 60; not because of the fact of termination or the reasons advanced therefor but because of acts committed in the termination process. The firing of an at will employee, not actionable as a wrongful discharge, does not become actionable simply because the label of the tort is changed. See, e.g., Morris v. Hartford Courant Co., supra,200 Conn. 684 (employee falsely accused of theft and terminated based on those false accusations failed to state a legally sufficient claim for intentional infliction of emotional distress). To hold otherwise would subvert the general rule that an employer may discharge an at will employee for any CT Page 1767 reason or no reason.
The plaintiff alleges only that he suffered emotional distress because he was discharged for refusing to accept a potentially risky work assignment which involved travel to Bahrain during "Operation Desert Shield." No extreme or outrageous conduct is alleged to have been committed in the termination process. The allegations of the plaintiff's complaint are insufficient to demonstrate extreme and outrageous conduct on the part of the defendants. See generally, Annotation, "Liability of Employer, Supervisor or Manager for Intentionally or Recklessly Causing Employee Emotional Distress," 52 ALR4th 855 § 3(b). Accordingly, the defendants' motion to strike is granted as to the second count of the plaintiff's seventh revised amended complaint.
 III
The defendants final claim is that the plaintiff's cause of action for negligent infliction of emotional distress is legally insufficient because the plaintiff has failed to allege that there was some factual basis or special circumstances upon which the defendants should have anticipated that the plaintiff would suffer emotional distress as a result of the lawful termination of his employment. In response, the plaintiff argues that he has sufficiently pleaded the elements necessary to set forth a cause of action for negligent infliction of emotional distress.
"In Montinieri v. Southern New England Telephone Co.,175 Conn. 337, 345, 398 A.2d 1180 (1978), [the Connecticut Supreme Court] first recognized a cause of action for `unintentionally-caused emotional distress' and held that recovery did not `depend on proof of either an ensuing physical injury or a risk of harm from physical impact.' [The court] concluded, however, that the plaintiff does have the burden of pleading and establishing that `the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm.' (Emphasis added.) Id., see Urban v. Hartford Gas Co.,139 Conn. 301, 93 A.2d 292 (1952); annot., 1 A.L.R. 4th 209 (1980); 2 Restatement (Second), Torts § 313 (1965)." Morris v.Hartford Courant Co., supra, 200 Conn. 683-84. CT Page 1768
"Negligent infliction of emotional distress in the employment context arises only where it is `based upon unreasonable conduct of the defendant in the termination process.' Morris v. Hartford Courant Co., 200 Conn. 676, 681-82,513 A.2d 66." Lund v. Stern Company, Inc., Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 463413 (1995). The mere termination of employment, even if wrongful, is not enough to sustain a claim for negligent infliction of emotional distress. Cf. Mandani v.Kendall Ford, Inc., supra, 818 P.2d 934. Such a claim must be accompanied by additional allegations of unreasonable conduct which occurred during the termination process or at the time of discharge. Chieffalo v. Norden Systems, Inc., Superior Court, judicial district of Stamford-Norwalk, No. 127694 (12 Conn. L. Rptr. 656, 657) (1994); Skierkowski v. CreativeGraphics Services, Inc., Superior Court, judicial district of Hartford-New Britain at New Britain, No. 463242 (1995). An example of unreasonable conduct occurring at the time of discharge is where a "meeting or any other aspect of the actual discharge was done in [a] . . . humiliating manner. . . ."Leniart v. C S Distributors, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, No. 516354 (1994).[8]
The operative allegations of the third count are "[t]hat as a result of the Defendant's wrongful termination, Gary F. Parsons did suffer from the unintentional infliction of emotional distress in that the Defendant Sikorsky should have realized that terminating the Plaintiff's employment two hours after he expressed his desire not to go to Bahrain, and immediately removing the Plaintiff from the building under security escort, involved an unreasonable risk of causing emotional distress and that that distress might result in illness or bodily harm."
These allegations are inadequate to state a claim for negligent infliction of emotional distress. Firstly, while the court has held that the defendant's termination of the plaintiff was not wrongful, whether it was or was not cannot, in itself, give rise to a tortious cause of action. Sheets v.Knight, supra, 308 Or. 330-331. Secondly, the defendant was not required to suffer a waiting period in excess of two hours before terminating the plaintiff's employment. Since the plaintiff was an at-will employee, his employment could be terminated at any time. Thirdly, once the plaintiff's CT Page 1769 employment was terminated, the defendant was entitled to "immediately remov[e] the Plaintiff from the building. . . ." Finally, that an employer, especially one such as Sikorsky Aircraft, after legally terminating the plaintiff's employment would then have the plaintiff removed from its building "under a security escort" is not unreasonable. Cf. Toth v. Square DCo., 721 F. Sup. 1231, 1238 (D.S.C. 1989) (same allegation made in connection with a claim of intentional infliction of emotional distress); Seneca Knitting Mills Corp. v. Wilkes,120 App. Div. 2d 955, 502 N.Y.S.2d 844, 845 (1986)(same). That is, it cannot be said the defendant should have realized that having the plaintiff leave under a security escort involved an unreasonable risk of causing him emotional distress which might result in illness or bodily harm. Morris v. HartfordCourant Co., supra, 200 Conn. 683-84; Urban v. Hartford GasCo., supra, 139 Conn. 301; annot., 1 A.L.R. 4th 209 (1980); 2 Restatement (Second), Torts § 313 (1965). On these allegations, a jury could not reasonably find that the defendants negligently inflicted emotional distress on the plaintiff.
The defendants' motion to strike is granted as to all counts.
BY THE COURT
___________________________ Bruce L. LevinJudge of the Superior Court