[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum of Decision On Motion to Strike
The issue before the court, on the defendants' motions to strike, is whether the plaintiff's eleven-count revised complaint sufficiently alleges causes of action for breach of an employment contract, breach of an implied contract, breach of an implied covenant of good faith and fair dealing, slander, libel, negligent infliction of emotional distress, intentional infliction of emotional distress, a violation of General Statutes §§ 31-71c, 31-76k (wage statutes), and a violation of General Statutes § 31-48b(d) (electronic surveillance).[1]
The plaintiff's eleven-count complaint arises out of the termination of her employment by the defendants on March 27, 1995. The plaintiff had been employed by the defendant A Child's Garden, Inc. (Corporation), a child care facility, as a teacher from August 1987 to August 1993. Thereafter, pursuant to a written contract apparently executed some time in 1993, the plaintiff was made assistant director for the school year-1993-1994 and co-director for the school years 1994-1995 and 1998-1999. The plaintiff claims that she was terminated without cause CT Page 3221 at a meeting which was held without notice on March 27, 1995, in violation of her employment contract. According to the plaintiff, this meeting was tape recorded by defendant A. Craig Miklus (Miklus). The plaintiff also claims that after the meeting, while clearing out her personal belongings, defendant Miklus questioned her several times about taking things that did not belong to her, much to her embarrassment. The plaintiff further claims that, at various times thereafter, the defendants informed clients and staff members, both verbally and by written memorandum, that the plaintiff was dismissed for "some undisclosed conduct." The plaintiff alleges that she made a written request for retraction of the material in the memorandum implicating her in "wrongdoing", which request was ignored by the defendants. The defendants argue that they were justified and acted lawfully in dismissing the plaintiff, in ensuring that she did not remove company property, and in informing others that the plaintiff was dismissed for wrongdoing.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Novametrix Medical Systems v. BOCGroup, Inc., 224 Conn. 210, 215, 618 A.2d 25 (1992). In considering a motion to strike, courts "construe the facts alleged in the complaint in a light most favorable to the pleader. If facts provable under the allegations would support a defense or a cause of action, the motion to strike must be denied." RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381,384, 650 A.2d 153 (1994), citing Alarm Applications Co. v.Simsbury Volunteer Fire Co., 179 Conn. 541, 545, 427 A.2d 822
(1980).
 I
Defendants Miklus and Tatem have moved to strike counts one, two, and three, which allege breach of an employment contract, breach of an implied contract, and breach of a covenant of good faith and fair dealing, respectively, on the ground that the plaintiff did not have any contractual relationship with the two individual defendants. The defendants also claim that there are no facts alleged which would allow the court to pierce the corporate veil under Connecticut law. In opposition, the plaintiff argues that she has pleaded facts sufficient to overcome a motion to strike because she has alleged that the individual defendants acted for, or as the CT Page 3222 alter ego of, the Corporation.
The complaint affirmatively avers that the plaintiff was employed by the corporation. In Connecticut, "[c]ourts will . . . disregard the fiction of a separate legal entity to pierce the shield of immunity afforded by the corporate structure in a situation in which the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor." Angelo Tomasso, Inc. v. Armor Construction Paving, Inc., 187 Conn. 544, 552, 447 A.2d 406 (1982). The corporate veil "[o]rdinarily . . . is pierced only under exceptional circumstances . . . [such as] where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetrate fraud or promote injustice." Id., 557. The two methods generally used to pierce the corporate veil are the instrumentality rule and the identity rule. Id., 553-54. Under either formula, "the key factor . . . is the element of control or influence exercised by the individual sought to be held liable over corporate affairs." Id., 556.
"The instrumentality rule requires, in any case but an express agency, proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respectto the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." (Citations omitted, emphasis in original.) Angelo Tomasso, Inc.v. Armor Construction Paving, Inc., supra, 187 Conn. 544. The identity rule essentially states that "[i]f plaintiff can show that there was such a unity of interest and ownership that the independence of the corporation had in effect ceased or had never begun," adherence to the corporate fiction will generally not be permitted. (Internal quotation marks omitted.) Id., 554.
Superior Court decisions are not in harmony as to whether or to what extent a complaint must allege the elements of the instrumentality rule or the identity rule in order to sufficiently allege that the corporate form should be disregarded. While not cited in those decisions, this court CT Page 3223 finds Macchi v. Glow's Restaurant, Inc., 136 Conn. 156,69 A.2d 566 (1949), instructive. In Macchi, "[t]he issue, raised by demurrer in the trial court, [was] whether a criminal conviction of the officers of the defendant corporation is a criminal conviction of the corporation." Ibid. The issue arose in a summary process action in which the plaintiff lessor sought to recover possession of premises from her corporate lessor whose officers had been convicted of gambling. General Statutes (Rev. 1949) § 8281 (now § 47a-31) provided that such a conviction by a lessee or tenant rendered a lease void. The Supreme Court held that the trial court correctly sustained the demurrer. In so holding the court stated: "There is no allegation that the corporation was convicted of a violation of the gaming laws and none that its president and secretary were acting for it at the time the offense was committed. The claim of the plaintiff, as appears from the cases cited in her brief, is that the trial court could `pierce the corporate veil' and rule that the [officers] and corporation were one. [citations omitted.] Nofacts are alleged which make the principles of these casesapplicable." (Emphasis added.) Id., 157.
In her complaint, the plaintiff has alleged that defendants A. Craig Miklus and Elaine Tatem were shareholders, directors, officers and employees of the corporation, and "acted for" or "as the alter ego of" the corporation in calling the meeting, firing the plaintiff, questioning the plaintiff about taking things which were not hers, making statements to others about plaintiff's termination, issuing the memorandum regarding plaintiff's termination, and refusing to print a retraction of the same. These are simply conclusions of law. Cf. Mingachos v.CBS, Inc., 196 Conn. 91, 108, 491 A.2d 368 (1985). The defendant's response that whether an individual is acting as the alter ego of a corporation is a question of fact for the jury misses the mark. The issue before the court is about pleading. The plaintiff has failed to plead facts demonstrating the requisite control necessary to disregard the corporate form under either of the two methods for piercing the corporate veil. For this reason, the defendants' motion to strike counts one, two and three is granted.
 II
All three defendants have moved to strike counts four and five of the complaint, which allege slander and libel, respectively, on the grounds that the plaintiff has not CT Page 3224 sufficiently pleaded slander because she cannot prove that the words used by the defendants are defamatory, and that she cannot prove libel because she has not pleaded any economic damage or reputational injury. As for the slander count, the plaintiff argues that she has pleaded facts sufficient to demonstrate publication and harm to her reputation, which she claims are the two elements required for defamation of character. As for the libel count, the plaintiff argues that she has pleaded facts sufficient to demonstrate that the defendants defamed her by stating that she engaged in some "improper conduct". Moreover, the plaintiff asserts that, because she has pleaded that the defendants published libelous statements about her profession or business, the complaint contains facts sufficient to establish libel per se, which does not require her to plead special damages.
"Defamation is made up of the twin torts of libel and slander — the one being, in general, written while the other in general is oral. . . ." Prosser Keeton, The Law of Torts § 111, p. 771 (5th Ed. 1984 Sup. 1988). "Before a party will be held liable for libel, there must be an unprivileged publication of a false and defamatory statement." Strada v. ConnecticutNewspapers, Inc., 193 Conn. 313, 316, 477 A.2d 1005 (1984).
"An indispensable element of an action of slander is injury to the reputation of the person defamed. . . . The action fails unless that element is present. When the defamatory words are actionable per se, the law conclusively presumes the existence of injury to the plaintiff's reputation. He is required neither to plead or prove it. [citations omitted.] The rule is different, however, when the defamation is actionable per quod. There, the law indulges in no such presumption. For this reason, in jury to the reputation must be alleged and proved as an essential link between the slanderous utterance and the special damage which constitutes the basis of recovery in actions. . . ." (Emphasis added.) Urban v. Hartford Gas Co., 139 Conn. 301,308, 93 A.2d 392 (1952). "Spoken words are actionable per se only if they charge a general incompetence or lack of integrity. They are not slanderous per se if they charge no more than specific acts, unless those acts are so charged as to amount to an allegation of general incompetence or lack of integrity."Proto v. Bridgeport Herald Corporation, 136 Conn. 557, 567,72 A.2d 820 (1950).
Although the fourth count of the revised complaint employs CT Page 3225 the word "libel", it does so only in the colloquial sense. As a matter of law, that count seeks to assert a cause of action for slander. The operative allegations of that count are as follows: "In addition to libeling the plaintiff by the defendant's oral comments that the plaintiff was taking items which were not her personal property, the defendants libeled the plaintiff by advising other staff members, parents of the children of the school and other persons that the resignation was required due to some undisclosed conduct on the part of the plaintiff."
It does not appear either by express implication nor by fair implication that the "oral comments" alluded to in the foregoing allegation were published. "`[T]he dissemination of an allegedly defamatory material among employees of a corporation does not constitute a separate "publication" under Connecticut law.'" Ziobro v. Connecticut Institute for the Blind,818 F. Sup. 497, 503 (D.Conn. 1993). For this reason those comments are not actionable. As for the statements made to "parents of the children of the school and other persons," the plaintiff has not alleged that those statements were false. Moreover, those statements did not charge a general incompetence or lack of integrity; no slander per se is alleged. Therefore, this count does not state a cause of action because the plaintiff fails to allege special damages. "The burden rests on the plaintiff to allege a recognizable cause of action. [citations omitted.] Such a requirement embodies the principle that in any action the complaint is required to set forth facts on the basis of which, if true, the plaintiff may be able to establish in law a right to relief, for unless that is done, the pleading is demurrable."McAnerney v. McAnerney, 165 Conn. 277, 282, 334 A.2d 437 (1973).
The fifth count purports to set forth a claim for libel. Again, however, no damages are alleged. Therefore, that count is legally insufficient unless it alleges libel per se. The critical allegation of that count is as follows: "On or about March 28, 1995, the defendants sent a written communication to the parents of the students in the school which indicated that the resignation of the plaintiff was required due to some undisclosed improper conduct on her part, which communication upon information and belief was published in other ways." The standard for libel per se is different than that for slander per se. "It is well settled that a libel is actionable per se if it charges improper conduct or lack of skill or integrity in one's profession or business and is of such a nature that it is calculated to cause injury to one in his profession of CT Page 3226 business." Proto v. Bridgeport Herald Corporation, supra,136 Conn. 566. Thus written words are libelous per se if they charge only a single such act. Id., 567. Again, however, the plaintiff has failed to allege that the written words were false. While it is true that a complaint may survive under the rule that what is implied need not be expressly pleaded; Paulsen v. Manson,203 Conn. 484, 493, 525 A.2d 1314 (1987); "`essential allegations may not be supplied by conjecture of remote implication.'"Cahill v. Board of Education, 198 Conn. 229, 236, 502 A.2d 410
(1985). In light of the laxity with which the fourth and fifth counts were drafted, this court will not indulge in remote implication, nor determine whether the fifth count alleges a defamatory statement which rises to the level of libel per se. Because the plaintiff fails to allege that the publication was false, the motion to strike the fifth count is granted.
 III
All three defendants have moved to strike count seven of the complaint, which alleges negligent infliction of emotional distress, on the ground that the plaintiff has failed to plead facts sufficient to meet the elements of that cause of action as established under Connecticut law. The seventh count alleges that, without notice, the plaintiff was called to a meeting, that Miklus demanded her resignation without sufficient reason and in violation of her contract and the staff manual, that she was thereby coerced into submitting her resignation and was ordered to remove her personal property during which time Miklus questioned her about whether she had taken things that did not belong to her. The plaintiff argues that, under the circumstances, it was unreasonable for the defendants to fire her and to then "chide" her while she was removing her personal belongings from the building.
"In Montinieri v. Southern New England Telephone Co.,175 Conn. 337, 345, 398 A.2d 1180 (1978), [the Connecticut Supreme Court] first recognized a cause of action for-`unintentionally-caused emotional distress' and held that recovery did not `depend on proof of either an ensuing physical injury or a risk of harm from physical impact.' [The court] concluded, however, that the plaintiff does have the burden of pleading and establishing that `the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might resultin illness or bodily harm.' (Emphasis added.) Id., see Urban v.CT Page 3227Hartford Gas Co., 139 Conn. 301, 93 A.2d 292 (1952); annot., 1 A.L.R. 4th 209 (1980); 2 Restatement (Second), Torts § 313 (1965)." Morris v. Hartford Courant Co., supra, 200 Conn. 683-84.
"The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." Mandani v. Kendall Ford, Inc., 312 Or. 198, 818 P.2d 930,934 (1991). Termination of employment is a relatively commonplace event. It is likely that a person whose employment is terminated will suffer some degree of stress and anxiety regardless of whether the termination was lawful and proper or wrongful and tortious in nature. "Negligent infliction of emotional distress in the employment context arises only where it is `based upon unreasonable conduct of the defendant in the termination process.' Morris v. Hartford Courant Co., 200 Conn. 676,681-82, 513 A.2d 66." Lund v. Stern Company, Inc., Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 463413 (1995). The mere termination of employment, even if wrongful, is not enough to sustain a claim for negligent infliction of emotional distress. Cf. Mandani v.Kendall Ford, Inc., supra, 818 P.2d 934. Such a claim must be accompanied by additional allegations of unreasonable conduct which occurred during the termination process or at the time of discharge. Chieffalo v. Norden Systems, Inc., Superior Court, judicial district of Stamford-Norwalk, No. 127694 (12 Conn. L. Rptr. 656, 657) (1994); Skierkowski v. Creative GraphicsServices, Inc., Superior Court, judicial district of Hartford-New Britain at New Britain, No. 463242 (1995). An example of unreasonable conduct occurring at the time of discharge is where a "meeting or any other aspect of the actual discharge was done in [a] . . . humiliating manner. . . ." Leniart v. C SDistributors, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, No. 516354 (1994).[2] However, "the protection the law accords to `the interest in one's peace of mind' . . . must be limited so as not to `open up a wide vista of litigation in the field of bad manners, where relatively minor annoyances had better be dealt with by instruments of social control other than the law.'" Montinieriv. Southern New England Telephone Co., supra, 175 Conn. 345. The only unreasonable conduct other than the wrongful termination that is alleged is that Miklus ordered the plaintiff to clear out her personal belongings, at which time he questioned her as to whether she had been taking property that did not belong to her. This is not conduct which the defendants should have realized involved an unreasonable risk of causing emotional CT Page 3228 distress which might have resulted in illness or bodily harm. The seventh count is legally insufficient and the motion to strike it is granted.
 IV
All three defendants have moved to strike count eight of the complaint, which alleges intentional infliction of emotional distress, on the ground that the conduct alleged by the plaintiff is not outrageous as a matter of law.[3] In opposition, the plaintiff argues that she has pleaded facts sufficient to establish a cause of action for intentional infliction of emotional distress and that the issue of whether defendants' conduct rises to an actionable level is a question of fact to be decided at trial.
"In order to prevail in a case for liability under . . . the intentional infliction of emotional distress [doctrine], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress, or that he know or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Citations omitted, emphasis omitted, internal quotation marks omitted). Petyan v.Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Internal quotation marks omitted.) DeLaurentis v. New Haven, 220 Conn. 225, 266,597 A.2d 807 (1991). "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy either of these elements is a question, in the first instance, for [the] court. Only where reasonable minds can differ does it become an issue for the jury. Reed v. Signode Corporation,652 F. Sup. 129, 137 (D. Conn. 1986); 1 Restatement (Second), Torts § 46, comment (h) (on the issue of extreme and outrageous conduct) and comment (j) (on the issue of severe emotional distress). Since the defendant[s] raise these issues by a motion to strike, the court is limited to the facts alleged in the complaint. King v. Board of Education, 195 Conn. 90, 93,486 A.2d 111 (1985)." Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17, 19-20, 597 A.2d 846 (1991) (Berdon, J.). The factual CT Page 3229 underpinning of count eight is the same as count seven. These allegations are insufficient to demonstrate extreme and outrageous conduct on the part of the defendants. See Brown v.Ellis, 40 Conn. Sup. 165, 167, 484 A.2d 944 (1984); see generally, Annotation, "Liability of Employer, Supervisor or Manager for Intentionally or Recklessly Causing Employee Emotional Distress," 52 ALR4th 855 § 3(b). The motion to strike the eighth count is granted.
 V
Defendants Miklus and Tatem have moved to strike count nine of the complaint, which alleges a violation of two of Connecticut's wage statutes, General Statutes §§ 31-71c(b) and31-76k, on the ground that the individual defendants were not the plaintiff's employer and are not subject to liability under the wage statutes. The plaintiff alleges that the two individual defendants acted for, or as the alter ego of, the Corporation and thereby becoming individually responsible for payment of wages and fringe benefits pursuant to the statutes.
For the reasons discussed in Part I, supra, the defendant's motion to strike count nine is granted. See Macchi v. Glow'sRestaurant, Inc., supra, 136 Conn. 156-157.
 VI
All three defendants have moved to strike count ten of the complaint, which alleges a violation of the electronic surveillance statute, General Statutes § 31-48b(d), on the ground that the statute does not apply to the facts of this case.[4] Specifically, the defendants claim that the tape recording of the meeting does not fall within the statute because they neither used electronic surveillance in an area restricted by the statute nor eavesdropped on a conversation regarding "employment contract negotiations". The plaintiff argues that the meeting did in fact involve "employment contract negotiations", and that, in any event, the determination is one of fact not implicating the legal sufficiency of the count.
In the relevant portions of her complaint, the plaintiff has pleaded that "[a]t the meeting, the defendant A. Craig Miklus demanded the resignation of the plaintiff Katherine H. Saloomey without sufficient reason and in violation of both the plaintiff's contract of employment and the staff manual of the CT Page 3230 defendant corporation. . . . Under duress, the plaintiff was coerced into submitting her resignation in response to the demand of the defendant A. Craig Miklus." Aside from the allegation that the meeting was recorded, these are the only facts pleaded regarding the meeting. The plaintiff has thus failed to plead facts sufficient to demonstrate that a taping of "employment contract negotiations" took place within the meaning of General Statutes § 31-48b(d). Indeed, the plaintiff alleges that her employment contract was terminated at the meeting. The unilateral termination of an employment contract is distinctly different than negotiating the terms of a contract. Moreover, the "negotiations" language in § 31-48b(d) has generally been understood to refer to collective bargaining negotiations. SeeBoard of Education v. Board of Labor Relations, 201 Conn. 685,693, 519 A.2d 41 (1986). Furthermore, the plaintiff cannot rely on § 31-48b(b), which involves recording or monitoring areas designed for employee health or personal comfort or for the safeguarding of their possessions.
"It is not essential to the sufficiency of a complaint alleging a statutory cause of action that the precise terms of the applicable statute `be either counted upon or recited.'Leone v. Kelly, 77 Conn. 569, 570, 60 A. 136 (1905); seeDubreuil v. Waterman, 84 Conn. 47, 51, 78 A. 721 (1911). `It is enough for [the plaintiff] to state such facts as, under the general law, of which courts will take judicial notice, entitle him to the redress he seeks.' Griswold v. Gallup, 22 Conn. 208,212 (1852); see Senior v. Hope, 156 Conn. 92, 97-98,239 A.2d 486 (1968)." (Footnotes omitted.) Bouchard v. People's Bank,219 Conn. 465, 470-471, 594 A.2d 1 (1991); accord, Oakley v.Commission on Human Rights and Opportunities, 38 Conn. App. 506,520, 662 A.2d 137 (1995), cert. granted, 235 Conn. 917 (1995). However, the plaintiff has pleaded no such facts.
The defendants' motion to strike is granted in its entirety.
BY THE COURT
___________________ Bruce L. Levin Judge of the Superior Court