[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTIONS TO STRIKE
Factual Background
CT Page 2949
The plaintiff, Ronald Protasewich, was employed jointly by Combustion Engineering, Inc. ("Combustion") and Asea Brown Boveri, Inc. ("Asea")[1] from August 8, 1983, until May 23, 1995, "in various positions, including most recently as a Senior Project Procurement Manager." (Revised Complaint, ¶ 7.) The following, in substance, is alleged by the plaintiff in his revised complaint, dated June 3, 1996.
The plaintiff received favorable reviews, including promotions and pay raises, throughout his tenure. (See Revised Complaint, ¶ 8.) In January 1995, the president of Combustion and Asea, Richard F. Cronin ("Cronin") announced that the corporation would begin an internal investigation, with employee interviews, into "inappropriate business practices." (See Revised Complaint, ¶ 9.)
On May 11, 1995, the plaintiff was interrogated in a locked conference by Kevin Chadbourne Downs ("Downs") (acting under the authority of the corporate legal counsel). (See Revised Complaint, ¶ 11 and 12.) This interview continued on May 12 and May 15. (See Revised Complaint, ¶¶ 26, 28.) The plaintiff was required to sign a confidentiality agreement, which prohibited the plaintiff from discussing the interview with anyone except for his wife. (See Revised Complaint, ¶ 13.) The plaintiff was told he was simply being interviewed and that counsel was not necessary. (Revised Complaint, ¶ 13.)
Downs informed the plaintiff that information was gathered about the plaintiff through "clandestine surveillance, wire-tapping, eavesdropping and anonymous informants"; (Revised Complaint, ¶ 14); which led the corporation to believe that the plaintiff was having a secret relationship with, and was accepting "bribes, lunches, gifts and vacations" from John Nicolace ("Nicolace"), a sales representative. (Revised Complaint, ¶ 15.) The plaintiff vigorously denied the accusations about this improper relationship with Nicolace. (See Revised Complaint, ¶ 16.)
The plaintiff was required to sign a statement attesting to the accuracy of the representations therein, despite believing the document contained false and misleading material. (See Revised Complaint, ¶¶ 19-21.) The plaintiff was advised interalia, that if he did not sign the document he would be terminated for insubordination; (see Revised Complaint, ¶ CT Page 2950 22); and that he could amend the statement at a later date. (See Revised Complaint, ¶ 23.) The plaintiff thus signed the document. (See Revised Complaint, ¶ 24.)
The plaintiff reported the unfair treatment he received by Downs to General Counsel Thomas S. Sacco. (See Revised Complaint, ¶ 25.)
The plaintiff submitted bank statements upon Downs' demand and signed an addendum to his original statement on May 15, despite the inclusion of false information, under threat of termination. (See Revised Complaint, ¶¶ 28-29, 31.) The addendum indicated that $59,000 of "unexplained" deposits were made to the plaintiff's bank accounts from 1990-94. (See Revised Complaint, ¶ 29.) Again, on May 15, the plaintiff reported his unfair treatment to Sacco and also demanded the return of his bank statements, together with an itemization of the alleged "unexplained" deposits. (See Revised Complaint, ¶ 32.) After two additional demands for an itemization of the deposits in question; (see Revised Complaint, ¶¶ 33-34); and complaints about Downs' treatment to both Sacco and Cronin; (see Revised Complaint, ¶¶ 35-36); the plaintiff was given a specific itemization of the questioned deposits. (See Revised Complaint, ¶ 37.)
On May 18, the plaintiff demanded to amend the previously signed statement and addendum, but Downs refused this request. (See Revised Complaint, ¶ 38.)
The plaintiff and fourteen other employees were terminated for alleged misconduct as a result of the internal investigation on May 23, 1995. (See Revised Complaint, ¶¶ 39-40.) On May 23, the plaintiff was escorted out of the building by security personnel with security vehicles positioned outside in full view of his co-workers. (See Revised Complaint, ¶¶ 41-42.) Combustion and Asea, through Cronin, announced the plaintiff's termination to all employees and then, on May 24 and May 26, "caused to be published in The Journal Inquirer and TheHartford Courant the statement that all employees terminated on May 23, 1995, were terminated for improper business conduct." (Revised Complaint, ¶ 43.)
Procedural History
The plaintiff filed an eight-count revised complaint on June CT Page 2951 4, 1996, naming as defendant Combustion, Asea, Cronin, Sacco and Downs.[2]
Counts one through three of the plaintiff's revised complaint, directed to the Corporate Defendants, allege (1) breach of contract/promissory estoppel; (2) breach of the covenants of good faith and fair dealing; and (3) wrongful termination. Count four, directed to the Corporate Defendants and Cronin, alleges defamation. Counts five and six, directed to all of the defendants, allege intentional and negligent infliction of emotional distress, respectively. Count seven, directed against Sacco, Cronin, and Downs, alleged tortious interference with contractual relationship.[3] Count eight, directed to all of the defendants, alleges negligent misrepresentation.
The Corporate Defendants, Sacco and Cronin filed a motion to strike counts one through three and five through eight of the plaintiff's revised complaint on June 20, 1996, accompanied by a supporting memorandum of law.[4] Downs filed a motion to strike counts five through eight of the plaintiff's revised complaint on July 10, 1996, accompanied by a supporting memorandum of law. The plaintiff filed a single memorandum in opposition to these motions to strike on September 11, 1996.
Legal Discussion
A motion to strike is the proper method by which to challenge the legal sufficiency of a complaint or any count therein.Gulack v. Gulack, 30 Conn. App. 305, 309, 620 A.2d 181 (1993). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Citation omitted; internal quotation marks omitted.) Novametrix MedicalSystems v. BOC Group, Inc., 224 Conn. 210, 215, 618 A.2d 25
(1992). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Id. "In judging a motion to strike . . . it is of no moment that the [party] may not be able to prove his allegations at trial." Levine v. Bess Paul Sigel Hebrew Academy of GreaterHartford, Inc., 39 Conn. Sup. 129, 132, 471 A.2d 679 (1983).
The grounds for the two pending motions to strike, which are nearly identical with respect to counts five through eight,[5]
and for the opposition to the motions be discussed below count by count. CT Page 2952
Count One: Breach of Contract/Promissory Estoppel
The Corporate Defendants contend that the plaintiff's first count fails because the statements alleged in the revised complaint do not demonstrate any contractual commitment on the part of the Corporate Defendants to discharge the plaintiff only for cause, nor do the allegations indicate that the alleged contract was supported by any consideration. Rather, the Corporate Defendants argue that the plaintiff was an employee at will, terminable with or without cause. The Corporate Defendants further contend that any statements made to the plaintiff did not change the terms of the plaintiff's employment, nor were the statements sufficiently promissory or definite to support a cause of action for promissory estoppel.
The plaintiff asserts that representations made to him by the Corporate Defendants in their literature, policies, statements and practices created an implied employment contract which allowed for termination for cause only. This implied contract, plaintiff asserts, also required the Corporate Defendants to treat the plaintiff fairly, investigate claims, review decisions to terminate employees, give the plaintiff an opportunity to confront claims, provide warning of misconduct, etc. (See Revised Complaint, count 1, ¶ 50.) As to the Corporate Defendants' lack of consideration argument, the plaintiff argues that continued employment is sufficient consideration for an employment contract.
Breach of Contract
The Connecticut Supreme Court has stated, "[a]t the outset, we note that all employer-employee relationships not governed by express contracts involve some type of implied `contract' of employment." Torosyan v. Boehringer Ingelheim Pharmaceuticals,Inc., 223 Conn. 1, 13, 662 A.2d 89 (1995). "Typically, an implied contract of employment does not limit the terminability of an employee's employment but merely includes terms specifying wages, working hours, job responsibilities and the like. Thus, as a general rule, contracts of permanent employment, or for an indefinite term, are terminable at will." (Citation omitted; internal quotation marks omitted.) Id., 14. "[T]he default rule of employment at will can be modified by the agreement of the parties." Id. "A contract implied in fact, like an express contract, depends on actual agreement." Barry v. Posi-SealCT Page 2953International, Inc., 36 Conn. App. 1, 5, 647 A.2d 1031 (1994).
Construing the facts alleged in the complaint in the light most favorable to the plaintiff, by citing various representations made by the Corporate Defendants in their literature, policies, statements and practices, the plaintiff has sufficiently alleged, for purposes of withstanding the motions to strike, that he had an implied employment contract which provided for termination for cause only. "In the absence of definitive contract language . . . the determination of what the parties intended to encompass in their contractual commitment is a question of the intention of the parties, and an inference of fact." (Citation omitted; internal quotation marks omitted).Finley v. Aetna Life Casualty Co., 202 Conn. 190, 199,520 A.2d 208 (1987). See also Skierkowski v. Creative GraphicsServices, Inc., Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 463242 (May 5, 1995, Handy, J.) ("It is up to the trier of fact to determine the validity of these alleged representations. If valid, the trier of fact must then establish if such representation did in fact create an implied contract. If and when it is determined that said contract existed, the trier of fact will then entertain the issues raised by the defendant regarding whether or not the plaintiff relied on the representations and whether or not the defendant has just cause in terminating the plaintiff's employment.").
Promissory Estoppel
"A fundamental element of promissory estoppel . . . is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all." D'Ulisse-Cupo v. Board of Directors of Notre Dame HighSchool, 202 Conn. 206, 213, 520 A.2d 217 (1987).
Construing the facts alleged in the complaint in the light most favorable to the plaintiff, the facts alleged do not support a cause of action for promissory estoppel because the representations made by the Corporate Defendants in their policies, literature, statements and practices were not sufficiently promissory to induce reasonable reliance on the part of the plaintiff. (See Revised Complaint, count 1, ¶¶ 46, 47.) CT Page 2954
Because the plaintiff has sufficiently pleaded a cause of action for breach of contract, although not a cause of action for promissory estoppel, the Corporate Defendants' motions to strike count one are denied.
Count Two: Breach of the Implied Covenant of Good Faith and FairDealing
Working on the assumption that the plaintiff was an employee at will, the Corporate Defendants argue that the covenant of good faith and fair dealing cannot be read into an employment at will relationship, unless the plaintiff alleges a violation of an important public policy. The Corporate Defendants contend that the plaintiff has failed to allege the violation of an important public policy with which to support such a cause of action.
The plaintiff contends that the covenant of good faith and fair dealing is implicit in employment contracts. The plaintiff argues that because he has sufficiently pleaded the existence of an employment contract, his cause of action for breach of the covenant of good faith and fair dealing is legally sufficient.See Carbone v. Atlantic Richfield Co., 204 Conn. 460, 470-71,528 A.2d 1137 (1987), citing Magnan v. Anaconda Industries,Inc., 193 Conn. 55, 479 A.2d 781 (1984).[6]
In light of the above ruling with respect to count one, and the fact that plaintiff's status presents a factual issue, the motions to strike this count are denied.
Count Three: Wrongful Termination
The Corporate Defendants, assuming for the basis of their argument that the plaintiff was an employee at will, assert that the plaintiff has failed to allege any facts which would allow the plaintiff's cause of action to fall under the "public policy" exception to the terminable at will doctrine. Instead, the Corporate Defendants argue, the plaintiff tries to characterize certain tortious conduct as violative of public policy.
In opposition, the plaintiff contends that allegations of violations of several sections of the Connecticut General Statutes support the claim that the plaintiff's termination was in violation of public policy. Therefore, the plaintiff argues, his cause of action for wrongful termination is legally sufficient. CT Page 2955
The Connecticut Supreme Court "recognized a common law cause of action in tort for the discharge of an at will employee if the former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." (Emphasis in original.)Carbone v. Atlantic Richfield Co., supra, 204 Conn. 466-67, quoting Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471,475, 427 A.2d 385 (1980). "[T]he right to recover in tort for wrongful discharge extends only to employees at will."D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, supra, 202 Conn. 211 n. 1.
The plaintiff makes allegations that the Corporate Defendants violated General Statutes §§ 53a-11, 53a-48, 53a-96, 53a-188,53a-189 and 53a-192. (See Revised Complaint, count three, ¶ 56.) The alleged public policy violations asserted by the plaintiff took place during the internal investigation into the plaintiff's (and other employees') alleged misconduct prior to the plaintiff's termination. The plaintiff alleges that he was terminated for "repeated willful misconduct"; (see Revised Complaint, ¶ 39); including the taking of bribes. (See Revised Complaint, ¶ 15.)
The above allegations, as pleaded, are not sufficient to support a cause of action for wrongful termination. "[I]t [is] clear that in order to state a cause of action for wrongful termination, an employee must allege that he or she was terminated because of an attempt to uphold or vindicate animportant public policy." (Emphasis added.) Ferrato v. N. CarRental System, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 549720 (July 18, 1996, Aurigemma, J.). The plaintiff in the present case makes no allegation in count three that he was discharged "because of an attempt to uphold or vindicate an important public policy";Id.; but alleges rather that the Corporate Defendants allegedly committed several statutory violations in the process of uncovering a reason to terminate the plaintiff. See Kelley v.United States Shoe Corp. , Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 042492 (November 5, 1993, Rush, J.) (holding that discharging the plaintiff for embezzlement, which was discovered following a 2 1/2 hour interview with the plaintiff without interruption and the plaintiff's signing a inculpatory statement, was not violative of CT Page 2956 an important public policy).[7] The motions to strike count three are granted.
Count Five: Intentional Infliction of Emotional Distress
The Group Defendants and Downs argue that the plaintiff has failed to allege facts which support a cause of action for intentional infliction of emotional distress, further noting that (1) the defendants are not liable if they were exercising their rights to uncover intra-corporate wrongdoing in a permissible way; and (2) termination alone, even for an improper motive, is not enough to sustain a cause of action for intentional infliction of emotional distress. The plaintiff contends that the motions to strike fail to look at the factual allegations incorporated by reference into count five.
"In order for the plaintiff to prevail in a case for liability under . . . intentional infliction of emotion distress, four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should hove known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Petyan v. Ellis, 200 Conn. 243, 253,510 A.2d 1337 (1986).
"Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy . . . these elements is a question, in the first instance, for the court. Only where reasonable minds can differ does it become an issue for the jury." Parsons v. Sikorsky Aircraft Division, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 280394 (March 1, 1996, Levin, J.). "The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." (Citation omitted; internal quotation marks omitted.) Id. "Intentional, like negligent infliction of emotional distress in the employment context arises only where it is based upon conduct of the defendant in the termination process." Id., citing Morris v. Hartford CourantCo., 200 Conn. 676, 681-82, 513 A.2d 66.
Even construing the facts alleged in the light most favorable to the plaintiff, the present complaint does not satisfy the fourth element required to be alleged and proven, i.e., severe CT Page 2957 emotional distress, because the plaintiff has failed to allege any facts, which, if proven, would demonstrate that he has actually suffered severe emotional distress. (See Revised Complaint, count 5, ¶ 63, stating, "Said action of all defendants have caused plaintiff to suffer severe emotional distress.") "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix Medical Systems v. BOC Group,Inc., supra, 224 Conn. 215. Accordingly, the motions to strike are granted as to count five.
Count Six: Negligent Infliction of Emotional Distress
The Group Defendants and Downs contend that the plaintiff has failed to allege facts to demonstrate any unreasonable conduct on the part of the defendants, and that the cause of action for negligent infliction of emotional distress should therefore fail. The plaintiff opposes the motion to strike count six on the ground that the conduct of all the defendants during the termination process was unreasonable.
To sustain a cause of action for negligent/unintentional infliction of emotional distress, "the plaintiff does have the burden of pleading . . . that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused,might result in illness or bodily harm." (Citations omitted; emphasis in original; internal quotation marks omitted.) Morrisv. Hartford Courant Co., supra, 200 Conn. 683. In the employment context, "a complaint is not sufficient if it simply alleges mere termination. Rather, a complaint must allege more, for instance, that the actual termination was . . . done in an inconsiderate, humiliating, or embarrassing manner." (Citations omitted; internal quotation marks omitted.) Skierkowski v. CreativeGraphics Services, Inc., Superior Court judicial district of Hartford-New Britain at New Britain, Docket No. 463242 (May 5, 1995, Handy, J.).
The plaintiff alleged, in addition to the actual termination of employment; (see Revised Complaint, ¶ 39); that (1) he was interrogated in a locked room for several hours without interruption on at least three different occasions; (see Revised Complaint, ¶¶ 11, 18, 24-28); (2) the plaintiff was escorted by security guards to leave the premises on the day he was terminated "in full view of his co-workers"; (see Revised CT Page 2958 Complaint, ¶ 41); (3) "armed security personnel [were positioned] at all major exits and entrances" and "security vehicles with flashing lights [were positioned] in the parking lot"; (see Revised Complaint, ¶ 42); and (5) the defendants made a public announcement to all employees that the alleged reason for the plaintiff's termination was "breach of business ethics." (See Revised Complaint, ¶ 43.)
Construing the above factual allegations collectively in the light most favorable to the plaintiff, the plaintiff has alleged facts, which, if proven, may be deemed unreasonable conduct on the part of the defendants during the termination process and which may be considered "inconsiderate, humiliating, or embarrassing." See Skierkowski v. Creative Graphics Services,Inc., supra. See also Kelley v. United States Shoe Corp., supra;Skierkowski v. Creative Graphics Services Inc., supra (denying a motion to strike a count for negligent infliction of emotional distress because the plaintiff alleged that he relied on representations of job security and the plaintiff was terminated in the presence of two other employees).[8] Defendants' motions to strike count six are denied.
Count Eight: Negligent Misrepresentation
The Group Defendants contend that any representations made did not change the "at will" status of the plaintiff, nor did any representations made during the actual internal investigation process cause any damage to the plaintiff. Moreover, the Group Defendants argue, the plaintiff failed to allege that he reasonably relied on any misrepresentations made. Downs notes that the plaintiff failed to allege specifically what facts were negligently misrepresented or how the plaintiff relied on those facts.
The plaintiff counters that (1) a cause of action for negligent misrepresentation is legally sufficient if the plaintiff merely alleges that the representations made contained false information; and (2) the plaintiff relied to his detriment on the statements made that (a) he could correct the statements he signed during the interview, (b) he would be treated fairly, and (c) upper management would review the termination decision.
"[The Connecticut Supreme Court] has long recognized liability for negligent misrepresentation . . . [E]ven an innocent misrepresentation of fact may be actionable if the CT Page 2959 declarant has the means of knowing, ought to know, or has the duty of knowing the truth." (Citation omitted; internal quotation marks omitted.) D'Ulisse-Cupo v. Board of Directors of NotreDame High School, supra, 202 Conn. 218. "For purposes of a cause of action for negligent misrepresentation . . . the plaintiff need not prove that the representations made by the defendants were promissory. It is sufficient to allege that the representations contained false information." Id., 218. "[C]ourts liberally construe the pleadings in a way so as to sustain such a claim, particularly where the allegations in a complaint indicate, on their face, that an employer failed to exercise reasonable care in making representations to an employee on which the employee relied to his detriment." Id., 219-20. Lack of specificity of the alleged "nature of the defendants' negligence"; Id., 220; is not enough to warrant striking a cause of action for negligent misrepresentation, so long as the "facts alleged by the plaintiff . . . fairly apprise[d] the defendants of [the plaintiff's] intent to pursue a claim for negligent misrepresentation." Id. For a claim for negligent misrepresentation, "the plaintiff must allege and prove that the reliance on the misstatement was justified or reasonable. We have consistently held that reasonableness is a question of fact for the trier to determine based on all of the circumstances."Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559,579-80, 657 A.2d 212 (1995).
Construing the facts alleged in the complaint in the light most favorable to the plaintiff, I conclude that the plaintiff has sufficiently pleaded facts to support a cause of action for negligent misrepresentation. For example, the plaintiff alleged that he relied on the defendants' representations that the plaintiff could amend the statements that the plaintiff signed, but yet was not given the opportunity to do so; (see Revised Complaint, ¶¶ 19-23, 28-31, 38); and that he was told that if he signed the statements he would not be terminated, but nevertheless was terminated based solely on his signing the statements. (See Revised Complaint, ¶¶ 22, 39.) Accordingly, the motions to strike count eight are denied.
Conclusion
For the foregoing reasons, the defendants' motions to strike are granted as to counts 3 and 5, and denied as to counts 1, 2, 6 and 8. CT Page 2960
Douglas S. Lavine Judge, Superior Court